No. 23-1218

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

DARRELL TAYLOR, CHARLES LUCAS, KEVIN LEWIS, DARRELL BURKHART,
AND LEEVERTIS PAGE,
Individually and on behalf of others similarly situated,
*Plaintiffs-Appellants,*

v.

THE SALVATION ARMY NATIONAL CORPORATION, and SALVATION ARMY,
doing business as CENTRAL TERRITORIAL OF THE SALVATION ARMY,
*Defendants-Appellees.*

---

On Appeal from the United States District Court for the Northern
District of Illinois (No. 1:21-cv-06105)
The Honorable John R. Blakey

---

## BRIEF OF APPELLEES

---

Amy M. Gibson
Aronberg Goldgehn Davis &
Garmisa
330 N. Wabash Avenue, Suite
1700
Chicago, Illinois 60611
312-828-9600
agibson@agdglaw.com

Thomas P. Gies
Daniel W. Wolff
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2690
Fax: (202) 628-5116
tgies@crowell.com

## DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, undersigned counsel provides the following disclosure:

1.    The full name of every party that the attorney represents in the case:

The Salvation Army National Corporation ("Salvation Army National") and The Salvation Army, an Illinois Corporation ("Salvation Army Central").

2.    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the bankruptcy court, in the district court or before an administrative agency) or are expected to appear for the party in this Court:

Crowell & Moring LLP; Aronberg Goldgehn

3.    Identify all parent corporations, if any, of the party, and any publicly held company that owns 10% or more of the party's stock.

Salvation Army National is a nongovernmental corporation and has neither a parent corporation nor any publicly held corporation that owns 10% or more of its stock.  Salvation Army Central is a

nongovernmental corporation and has neither a parent corporation nor any publicly held corporation that owns 10% or more of its stock.

Dated: July 21, 2023                    /s/ Thomas P. Gies
                                        Thomas P. Gies

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................. i

TABLE OF AUTHORITIES ................................................................ vi

ORAL ARGUMENT STATEMENT ...................................................... xv

JURISDICTIONAL STATEMENT ........................................................ 1

INTRODUCTION ............................................................................... 1

STATEMENT OF THE ISSUES .......................................................... 5

STATEMENT OF THE CASE ............................................................. 6

I.    THE SALVATION ARMY OFFERS ITS REHABILITATION
PROGRAM TO HELP STRUGGLING ADULTS. .......................... 6

II.    PLAINTIFFS' ALLEGATIONS SOUGHT COMPENSATION
FOR PARTICIPATING IN A REHABILITATION
PROGRAM. ............................................................................ 8

III.   PROCEDURAL HISTORY AND DECISIONS OF THE
DISTRICT COURT ................................................................ 12

SUMMARY OF ARGUMENT ............................................................ 16

ARGUMENT ................................................................................... 19

I.    STANDARD OF REVIEW ....................................................... 19

II.    THE DISTRICT COURT PROPERLY GRANTED
SALVATION ARMY'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT. ............................................ 20

    A.    The District Court Lacked Subject Matter Jurisdiction. .... 21

        1.    *Rooker-Feldman* Bars Justice-Referred Plaintiffs'
Claims ......................................................................... 22

            (a)   *Rooker-Feldman* divests a federal court of
subject matter jurisdiction where a
plaintiff's federal-court claims seek relief for
asserted "injuries" caused by a state-court
judgment. .......................................................... 23

(b) The injury claimed by Justice-Referred Plaintiffs for participating in the Rehabilitation Program is a "practical result" of their state-court sentencing judgments. ........................................................ 24

(c) Plaintiffs' arguments against application of *Rooker-Feldman* are unavailing. ....................... 27

2. All Plaintiffs Lack Standing. ...................................... 30

B. Plaintiffs' FAC Failed to State a Valid TVPRA Claim for Their Participation in the Rehabilitation Program. ...... 33

1. Plaintiffs Failed to Plausibly Plead Facts Showing That They Engaged in "Labor or Services" by Participating in the Rehabilitation Program. .................................................................... 35

2. Plaintiffs Failed to Plead Facts Plausibly Alleging That Salvation Army Central Engaged in Any Unlawful Means of Coercion During Their Participation in the Rehabilitation Program. ............ 38

(a) Walk-In Plaintiffs failed to plead facts showing that warnings of early discharge from the Rehabilitation Program constitutes "threats of serious harm." ................................. 39

(i) The law permits warnings of adverse but legitimate consequences, and Walk-In Plaintiffs' allegations about the Rehabilitation Program amount to nothing more than that. ........................... 40

(ii) Walk-In Plaintiffs failed to plausibly plead why a reasonable person in their circumstances would not just leave the Rehabilitation Program. ........................... 48

(b) Justice-Referred Plaintiffs failed to plead facts showing that Salvation Army Central threatened them with serious harm or threatened to abuse the law or legal process. ................................................. 53

(c) Plaintiffs admitted leaving the Rehabilitation Program early. ........................... 58

3. Plaintiffs Failed to Plead Facts Showing That Salvation Army Central Had Scienter to Threaten Plaintiffs with Serious Harm ...................... 60

C. Plaintiffs' Remaining TVPRA Claims Were Properly Dismissed as Derivative of the Forced-Labor Claim .......... 62

III. THE DISTRICT COURT PROPERLY DENIED PLAINTIFFS' MOTION TO ALTER. ................................. 63

A. The District Court's Without-Leave-To-Amend Disposition of the FAC Was Appropriate. ........................... 63

B. The District Court Properly Denied Plaintiffs' Motion to Alter ................................................................ 67

1. Rule 59(e), Not Rule 15(a), Governs Plaintiffs' Motion to Alter. ............................................. 68

2. Even if Plaintiffs Satisfied Rule 59(e), Their Rule 15 Request for Leave to File a Second Amended Complaint Was Futile. ................................. 70

CONCLUSION ........................................................................ 73

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
　683 F.3d 328 (7th Cir. 2012) ........................................................ 19, 65

*Alkady v. Luna*,
　803 F. Appx 932 (7th Cir. 2020) ............................................ 20, 33, 53

*Arellano v. Marshalls of MA, Inc.*,
　No. 117CV00046TLSSLC, 2018 WL 1120870 (N.D. Ind.
　Feb. 2, 2018), *report and recommendation adopted*, No.
　1:17-CV-46-TLS, 2018 WL 1072530 (N.D. Ind. Feb. 27,
　2018) ................................................................................................ 50

*Armento v. Asheville Buncombe Cmty. Christian Ministry,*
*Inc.*,
　856 F. App'x 445 (4th Cir. 2021) ........................................................ 36

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ............................................................ 47, 61, 72

*Ashley v. United States*,
　No. 1:20-CV-0154-SWS/MLC, 2020 WL 8996805 (D.N.M.
　Nov. 2, 2020) .................................................................................... 59

*Barrientos v. CoreCivic, Inc.*,
　No. 4:18-CV-70 (CDL), 2023 WL 2666852 (M.D. Ga.
　March 28, 2023) ................................................................................ 63

*Beaulieu v. Ashford Univ.*,
　529 F. Supp. 3d 834 (N.D. Ill. 2021) ................................................. 33

*Bennett v. Spear*,
　520 U.S. 154 (1997) .......................................................................... 30

*Berger v. Nat'l Collegiate Athletic Ass'n*,
　843 F.3d 285 (7th Cir. 2016) ............................................................. 36

*Beth-El All Nations Church v. City of Chicago*,
486 F.3d 286 (7th Cir. 2007)........................................................ 24, 33

*Bistline v. Parker*,
918 F.3d 849 (10th Cir. 2019)............................................................ 45

*Brown v. Bowman*,
668 F.3d 437 (7th Cir. 2012)........................................................ 19, 24

*Burrell v. Staff*,
60 F.4th 25 (3d Cir. 2023), *cert. denied sub nom.*
*Lackawanna Recycling Ctr., Inc. v. Burrell*, No. 22-1034,
2023 WL 4163249 (U.S. June 26, 2023) ............................................ 29

*Carter v. Paschall Truck Lines, Inc.*,
No. 5:18-CV-41-BJB, 2023 WL 359559 (W.D. Ky. Jan. 23,
2023)................................................................................................ 59

*Cassillas v. Madison Ave. Assoc., Inc.*,
926 F.3d 329,333 (7th Cir. 2019) ..................................................... 30

*Copeland v. C.A.A.I.R.*,
2023 WL 3166345 (10th Cir. May 1, 2023) ....................................... 29

*Cowen v. Bank United of Texas*,
70 F.3d 937 (7th Cir. 1995)............................................................... 20

*Crowe v. Dir.*,
*TDCJ-CID*, No. 6:16CV491, 2018 WL 7814730 (E.D. Tex.
Sept. 18, 2018) ................................................................................ 58

*DaimlerChrysler Corp. v. Cuno*,
547 U. S. 332 (2006)......................................................................... 30

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
No. 10-CV-1341 JFB ETB, 2012 WL 748760 (E.D.N.Y.
Mar. 7, 2012) ................................................................................... 40

*District of Columbia Court of Appeals v. Feldman*,
460 U.S. 462 (1983).......................................................................... 21

*Doyle v. City of New York*,
91 F. Supp. 3d 480 (S.D.N.Y. 2015).....................................................36

*Fannon v. Guidant Corp.*,
583 F.3d 995 (7th Cir. 2009)..................................................20, 69, 70

*Fochtman v. Hendren Plastics, Inc.*,
47 F.4th 638 (8th Cir. 2022) .............................................................29

*Harris v. Henry*,
No. 1:22-CV-00366-LY, 2022 WL 16825200 (W.D. Tex.
Nov. 7, 2022), *report and recommendation approved*, 2023
WL 3035423 (W.D. Tex. Jan. 11, 2023) .............................................34

*Headley v. Church of Scientology Intern.*,
687 F.3d 1173 (9th Cir. 2012).......................................................40, 58

*Hollins v. Regency Corp.*,
867 F.3d 830 (7th Cir. 2017).............................................................36

*Hughes v. Northwestern Univ.*,
63 F.4th 615 (7th Cir. 2023) .............................................................47

*Hukic v. Aurora Loan Servs.*,
588 F.3d 420 (7th Cir. 2009).............................................................71

*Huon v. Denton*,
841 F.3d 733 (7th Cir. 2016).............................................................67

*Jakupovic v. Curran*,
850 F.3d 898 (7th Cir. 2017).............................................................23

*John Roe I v. Bridgestone Corp.*,
492 F. Supp. 2d 988 (S.D. Ind. 2007)................................................34

*Johnson v. Orr*,
551 F.3d 564 (7th Cir. 2008).............................................................21

*Johnson v. Salvation Army*,
957 N.E.2d 485 (Ill.App. 1 Dist. 2011) ........................................37, 42

*Juza v. Wells Fargo Bank, N.A.*,
  794 Fed.Appx. 529 (7th Cir. 2020)......................................... 72

*Kowalski v. Cook County Officers Electoral Bd*,
  No. 16-cv-1891, 2016 WL 4765711 (N.D. Ill. Sept. 13,
  2016)............................................................................................ 31

*Kyles v. J.K. Guardian Sec. Servs., Inc.*
  222 F.3d 289 (7th Cir. 2000)................................................... 31

*L. Offs. of David Freydin, P.C. v. Chamara*,
  24 F.4th 1122 (7th Cir. 2022) ................................... 19, 20, 35

*Lopez v. Miller*,
  No. 17-CV-2268, 2017 WL 11472556 (C.D. Ill. Nov. 29,
  2017)............................................................................................ 33

*Mallela v. Cogent Infotech Corp.*,
  No. 2:19-CV-01658-NR, 2020 WL 2541860 (W.D. Pa. May
  19, 2020)..................................................................................... 61

*Manley v. Indiana Dept. of Correction*,
  No. 3:13-CV-1308 JD, 2015 WL 4077243 (N.D. Ind. July 6,
  2015)............................................................................................ 58

*Markakos v. Medicredit, Inc.*,
  997 F.3d 778 (7th Cir. 2021)................................................... 33

*Mathis v. Metro. Life Ins. Co.*,
  12 F.4th 658 (7th Cir. 2021) .................................................. 30

*McCoy v. Iberdrola Renewables, Inc.*,
  760 F.3d 674 (7th Cir. 2014)................................................... 71

*Melendez v. City of New York*,
  503 F. Supp. 3d 13 (S.D.N.Y. 2020), *aff'd in relevant part*,
  16 F.4th 992 (2d Cir. 2021).................................................... 43

*Midwest Grinding Co., Inc. v. Spitz*,
  976 F.2d 1016 (7th Cir., 1992)............................................... 65

*Muchira v. Al-Rawaf*,
   850 F.3d 605 (4th Cir. 2017) .................................................. 33, 40, 61

*Panwar v. Access Therapies, Inc.*,
   No. 1:12-CV-00619-TWP, 2015 WL 1396599 (S.D. Ind.
   Mar. 25, 2015) .............................................................. 41, 54, 56, 57

*Parvati Corp. v. City of Oak Forest*,
   630 F.3d 512 (7th Cir. 2010) ............................................................. 31

*Pasamba v. HCCA Int'l, Inc.*,
   No. CV-08-0247-PHX-NVW, 2008 WL 2562928 (D. Ariz.
   June 24, 2008) ................................................................................... 55

*Patel v. The Salvation Army*,
   No. 03 C 9422, 2004 WL 2632923 (N.D. Ill. Nov. 17, 2004) .............. 37

*Pension Trust Fund for Operating Engineers v. Kohls Corp.*,
   895 F.3d 933 (7th Cir. 2018) ............................................................. 66

*People v. Bensch*,
   935 N.W. 2d 382 (Ct. App. Mich. 2019) ...................................... 25, 54

*People v. Lee*,
   979 N.E. 2d 992 (Ill. App. Ct. 2012) ................................................ 25

*People v. Mann*,
   2020 IL App (5th) 170210-U ............................................................. 28

*People v. Nevills*,
   2016 WL 4212273 (Ct. App. Mich. 2016) .......................................... 25

*People v. Ruth*,
   203 N.E. 3d 933 (Ill. 2022) ......................................................... 25, 27

*People v. Wilson*,
   228 Ill. 2d 35 (2008) ........................................................................ 54

*Pine Top Receivables of Illinois, LLC v. Banco De Seguros
   Del Estado*,
   No. 12 C 6357, 2016 WL 4530175 (N.D. Ill. Aug. 30, 2016) .............. 70

*Ritter v. Ross,*
    992 F.2d 750 (7th Cir. 1993) ............................................................. 26

*Roman v. Tyco Simplex Grinnell,*
    732 F. App'x 813 (11th Cir. 2018) ................................................... 51

*Roman v. Tyco Simplex Grinnell,*
    No. 8:16-CV-3449-T-33AEP, 2017 WL 2427251 (M.D. Fla.
    June 5, 2017) ...................................................................................... 47

*Rooker v. Fidelity Trust Co.,*
    263 U.S. 413 (1923) ........................................................................... 21

*Salvation Army v. Department of Community Affairs,*
    919 F.2d 183 (3d Cir. 1990) ............................................................. 37

*Saraswat v. Bus. Integra, Inc.,*
    No. 15-CV-4680, 2019 WL 1865193 (E.D. N.Y. Apr. 25,
    2019) ................................................................................................... 35

*Schleicher v. Salvation Army,*
    518 F.3d 472 (7th Cir. 2008) ........................................................... 37

*Schrader v. Wynn,*
    No. 219CV2159JCMBNW, 2021 WL 619376 (D. Nev. Feb.
    17, 2021) ............................................................................................. 48

*Shuler v. Walter E. Heller W. Inc.,*
    956 F.2d 1168 (9th Cir. 1992) ......................................................... 19

*Simonian v. MeadWestvaco Corp.,*
    812 F. Supp. 2d 925 (N.D. Ill. 2011) ............................................. 61

*Smith v. Dart,*
    803 F.3d 304 (7th Cir. 2015) ...................................................... 4, 43

*Stillwell v. Fashion Nova, LLC,*
    No. CV 21-7040-GW-MARX, 2022 WL 2965394 (C.D. Cal.
    Jan. 28, 2022) .................................................................................... 48

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.,*
    902 F.3d 735 (7th Cir. 2018)...............................................................31

*Swanson v. Indiana,*
    23 Fed. App'x 558 (7th Cir. 2001)......................................................26

*Swartz v. Heartland Equine Rescue,*
    940 F.3d 387 (7th Cir. 2019)........................................................23, 24

*Sykes v. Cook Cnty. Cir. Ct. Prob. Div.,*
    837 F.3d 736 (7th Cir. 2016).......................................................22, 23

*Taylor v. Fed. Nat. Mortg. Ass'n,*
    374 F.3d 529 (7th Cir. 2004)...............................................................28

*Tegete v. Maryknoll Sisters of Saint Dominic, Inc.,*
    No. 20-CV-5023 (CS), 2023 WL 2504744 (S.D.N.Y. Mar.
    14, 2023).....................................................................................56, 62

*Thornton v. Daly City,*
    No. 19-CV-07638-HSG, 2021 WL 965365 (N.D. Cal. Mar.
    15, 2021).............................................................................................61

*Travelers Prop. Cas. v. Good,*
    689 F.3d 714 (7th Cir. 2012)...............................................................21

*U.S. v. Toviave,*
    761 F.3d 623 (6th Cir. 2014)........................................................36, 58

*United States v. Calimlim,*
    538 F.3d 706 (7th Cir. 2008)........................................................45, 60

*United States v. Dann,*
    652 F.3d at 1170 ................................................................................60

*United States v. Rivera,*
    799 F.3d 180 (2d Cir. 2015) ...............................................................45

*Vaughn v. Phoenix House Programs of New York*,
  No. 14-CV-3918 RA, 2015 WL 5671902 (S.D.N.Y. Sept. 25,
  2015), *aff'd in relevant part by Vaughn v. Phoenix House
  New York*, 722 Fed. App'x 4 (2d Cir. 2018) ...................... 32, 54, 55, 58

*Vesely v. Armlist LLC*,
  762 F.3d 661 (7th Cir. 2014) ................................................. 68

*Vitrano v. United States*,
  721 F.3d 802 (7th Cir. 2013) ................................................. 63

*Williams v. Strickland*,
  87 F.3d 1064 (9th Cir. 1996) ........................................... 36, 37

*Zbaraz v. Madigan*,
  572 F.3d 370 (7th Cir. 2009) ................................................. 46

**Statutes**

730 ILCS 5/3-3-9(a) ................................................................... 25

730 ILCS 5/5-4-1 ....................................................................... 28

18 U.S.C. § 1589(a) .....................................8, 34, 35, 36, 38, 39, 60, 62, 73

18 U.S.C. § 1589(a)(2)-(4) ........................................................ 39

18 U.S.C. § 1589(b) ..................................................................... 8

18 U.S.C. § 1589(c) ..................................................... 39, 55, 57

18 U.S.C. § 1589(c)(2) ............................................................... 48

18 U.S.C. § 1590(a) ..................................................................... 8

18 U.S.C. § 1594(a) ..................................................................... 9

18 U.S.C. § 1594(b) ..................................................................... 8

18 U.S.C. § 1595(a) ........................................................... 8, 9, 63

28 U.S.C. § 1257 ......................................................................... 23

42 U.S.C. § 12613(c) ................................................................................ 46

M.C.L.A. 771.3(2)(a) ............................................................................... 25

Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000) .................................... 3

## U.S. Constitution

U.S. Const., amend. 1 .............................................................................. 60

U.S. Const., amend. 13 .............................................. 4, 33, 34, 54, 57, 58

## Rules

Fed. R. App. P. 26.1 ...................................................................................i

Fed. R. Civ. P. 8 ...................................................................................... 61

Fed. R. Civ. P. 12(b)(6) ............................... 4, 12, 13, 19, 21, 47, 53, 64, 72

Fed. R. Civ. P. 12(h)(3) ..................................................................... 20, 21

Fed. R. Civ. P. 15 .................................................................................... 70

Fed. R. Civ. P. 15(a) ...................................................... 19, 68, 70, 71

Fed. R. Civ. P. 59 .................................................................................... 70

Fed. R. Civ. P. 59(e) ................................................. 15, 19, 20, 68, 69, 70

MCR 6.425 ............................................................................................. 28

## Other Authorities

H.R. Rep. No. 106-939 ............................................................................. 44

## ORAL ARGUMENT STATEMENT

Defendants-Appellees believe that oral argument will materially assist the Court in resolving the issues presented in this case.

## JURISDICTIONAL STATEMENT

Appellant's amended jurisdictional statement is complete and correct.

## INTRODUCTION

Many people associate The Salvation Army[1] with red kettles, bell ringers, and toy drives during the holidays. That is certainly part of The Salvation Army's identity. But at issue in this lawsuit is the cornerstone of The Salvation Army's religious mission: helping to pull up the neediest among us to stand on their own two feet.

Since its founding in 1865, The Salvation Army has preached the Gospel, offering the message of God's healing and hope to those in need. Its mission includes providing life-changing, residential rehabilitation services through its Adult Rehabilitation Centers, which serve adults

---

[1] "The Salvation Army" means and refers to the international religious and charitable organization. Defendants-Appellees The Salvation Army National Corporation ("Salvation Army National") and The Salvation Army, an Illinois Corporation ("Salvation Army Central") (together "Salvation Army") are two of several non-profit, tax exempt corporations that have been established by The Salvation Army. Salvation Army Central conducts the religious and charitable activities of The Salvation Army in its geographically defined Central Territory in the United States.

struggling with life's spiritual and social challenges, including jobessness, homelessness, and problems relating to alcohol or drug use.

People apply to the program believing that a structured environment will help them address their problems. Many participants come from prison, as part of work-release or parole programs as an alternative to further incarceration. The program offers participants spiritual counseling sessions, worship services, life-skills classes, and training. The aim of these activities is to assist the individual in their spiritual growth and development of good work habits and skills through work-therapy assignments, equipping them for a productive transition back into society. Participants are free to leave at any time.

Plaintiff-Appellants ("Plaintiffs"), all former participants in an Adult Rehabilitation Center, filed this lawsuit complaining that they were not being paid for the work-therapy feature of the program. Critically, there is no allegation that The Salvation Army tries to hide the details of the program: a complete description is available on its "Adult Rehabilitation Services" webpage.[2] It expressly identifies the work-therapy feature as a component of the program, stating, in part,

---

[2] https://www.salvationarmyusa.org/usn/rehabilitation/.

2

that participants should be "[a]ble to perform a work therapy assignment for a maximum of eight hours day. Schedules can be adjusted to meet the needs of the participants."

Despite this full disclosure, Plaintiffs invoked the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which Congress enacted to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000). Plaintiffs' complaint includes vague allegations of receiving "threats" to participate in work therapy. Plaintiffs' first amended complaint ("FAC") was fatally defective for its failure to state a claim under the TVPRA. For some Plaintiffs, who were criminally sentenced by state courts ("Justice-Referred Plaintiffs"), the FAC independently failed to plead subject matter jurisdiction under the *Rooker-Feldman* doctrine.

But subject matter jurisdiction is in fact lacking as to *all* Plaintiffs, including "Walk-In Plaintiffs"—*i.e.*, those Plaintiffs who enrolled outside the context of any state-court sentence—because none of them can show that his alleged "injuries" are traceable to Salvation

Army. Plaintiffs cannot escape that their claims are rooted in a residential rehabilitation program that they joined with full knowledge of its work-therapy component, and which they could voluntarily leave at any time. Accordingly, all Plaintiffs lack standing.

To the extent jurisdiction lies, this Court should affirm the district court's dismissal of the FAC under Rule 12(b)(6). "The glaring problem" with Plaintiffs' TVPRA claims is that each of them "chose on his own volition to participate in the [Rehabilitation] program and avail himself of its benefits"—in short, Plaintiffs' participation was "not involuntary." *Smith v. Dart*, 803 F.3d 304, 314–15 (7th Cir. 2015) (rejecting an analogous claim under the Thirteenth Amendment). The district court properly rejected Plaintiffs' pleading. Rule 12(b)(6) requires the pleading of *plausible* claims, not ones based on twisted inferences drawn from conclusory allegations.

There are numerous grounds for this Court to affirm the district court's dismissal of the FAC and denial of Plaintiffs' subsequent motion to alter judgment, and the Court should do so.

## STATEMENT OF THE ISSUES

1.     ***Rooker-Feldman/Subject Matter Jurisdiction***: Did the *Rooker-Feldman* doctrine bar Justice-Referred Plaintiffs' claims where, as alleged in the FAC, Justice-Referred Plaintiffs participated in the rehabilitation program because of their state-court sentences?

2.     ***Standing/Subject Matter Jurisdiction***: Did Plaintiffs lack standing to the extent they alleged entering and attending the rehabilitation program voluntarily?

3.     ***TVPRA/Rule 12(b)(6)***: Did Plaintiffs fail to plausibly allege a valid forced-labor claim for their participation in the rehabilitation program when, among other things, the FAC's allegations were that Salvation Army Central advised Plaintiffs that they would need to leave the program if they did not participate in program activities; Plaintiffs alleged being apprised of the work-therapy component before entering the program; and the FAC never alleged that Salvation Army prevented Plaintiffs from accessing food, clothing, or shelter elsewhere if they decided to leave the program?

4.     ***Motion to Alter***: Was the district court within its discretion to deny Plaintiffs' post-judgment request to amend their complaint for a

second time, when Plaintiffs never sought leave to amend their FAC

before the district court entered judgment, and they never explained

why their pleading defects could not have been addressed before the

district court entered judgment?

## STATEMENT OF THE CASE

## I.    THE SALVATION ARMY OFFERS ITS REHABILITATION PROGRAM TO HELP STRUGGLING ADULTS.

The Salvation Army is an international movement and an

evangelical part of the universal Christian Church. The mission of The

Salvation Army is to preach the Gospel of Jesus Christ to meet human

needs in his name without discrimination. The Salvation Army in the

United States serves its communities through many initiatives,

including spiritual formation, food pantries, after-school programs,

veteran services, and homeless shelters. Salvation Army Central also

administers a residential rehabilitation program ("Rehabilitation

Program" or "Program") at its Adult Rehabilitation Centers ("ARCs") in

the Central Territory. (Dkt. No. 39-1, 1-2).

The ARCs, which have operated for over 70 years, serve thousands

of people experiencing a variety of spiritual and social problems,

including problems related to substance-abuse, who otherwise have

been rejected by society. The Rehabilitation Program is generally 180 days in duration (AA 16, ¶ 105). The Program admits most people free of any charge, and provides them with counseling and religious instruction in a safe, structured environment, along with food, clothing, and a bed, all intended to help participants get their lives back on track. (Dkt. No. 39-1, 1-2).

The criteria for participation in the Rehabilitation Program are publicly available. Participants are required to have a Social Security card or birth certificate, pass a drug test upon arrival, attend worship classes and services, and be able to perform a work-therapy assignment for eight hours a day.[3] Work therapy, *i.e.*, performing basic assigned tasks at an ARC or one of its thrift stores to develop vocational skills and habits under the supervision of counselors and others, is an integral part of the Rehabilitation Program's religious mission to help Program beneficiaries become productive members of society. Work therapy is only one element in the holistic mix of rehabilitation services offered by the Program—services also include counseling, life-skills

---

[3] *See* https://www.salvationarmyusa.org/usn/rehabilitation (last visited July 13, 2023) (cited in AA 2, n. 1).

development classes, and worship services. One of the hallmarks of The

Salvation Army's spiritual-based approach is that individuals make a

voluntary choice to participate in a Rehabilitation Program, and to

remain there as they work on their recovery. (Dkt. No. 39-1, 2).

## II. PLAINTIFFS' ALLEGATIONS SOUGHT COMPENSATION FOR PARTICIPATING IN A REHABILITATION PROGRAM.

The FAC asserted allegations on behalf of four putative classes of

individuals who participated in the Rehabilitation Program: (1) a

"Nationwide Walk-In Class"; (2) a "Nationwide Justice-Referred Class";

(3) a "Central Territory Walk-In Class"; and (4) a "Central Territory

Justice-Referred Class." (AA 34-35). All Plaintiffs and the two putative

Central Territory Classes asserted five causes of action against

Salvation Army Central:

- **Count One** under 18 U.S.C. §§ 1589(a) and 1595(a) ("Obtaining Trafficked Labor");

- **Count Two** under 18 U.S.C. §§ 1589(b) and 1595(a) ("Benefitting from Trafficked Labor");

- **Count Three** under 18 U.S.C. §§ 1590(a) and 1595(a) ("Recruiting Trafficked Labor");

- **Count Four** under 18 U.S.C. §§ 1594(b) and 1595(a) ("Conspiracy to Recruit, Obtain, and Benefit from Trafficked Labor"); and

- **Count Five** under 18 U.S.C. §§ 1594(a) and 1595(a) ("Attempted Trafficking").

(AA 38-44).

Plaintiffs Taylor, Lucas, and Lewis and the two putative Nationwide Classes also asserted Counts Two through Five against Salvation Army National, but not Count One.

All claims were tied to the same general allegations that the work-therapy aspect of the Rehabilitation Program stemmed from Salvation Army National's policies, which Plaintiffs asserted, govern the Program's operations across the country. Plaintiffs alleged that they participated in a Rehabilitation Program operated by Salvation Army Central where they performed assigned tasks at an ARC or one of its thrift stores. Plaintiffs alleged that they performed work therapy for "a small amount of cash" each week that was insufficient to build their savings and that they were subject to rules during their participation in the Program that placed "requirements on [their] time," and "limit[ed] their freedom of movement and communication," which made them "vulnerable" to purported "threats" by Salvation Army Central. (*See, e.g.* AA 27, ¶¶ 192-95; 28, ¶¶ 208-10; 29, ¶¶ 222-24; 31, ¶¶ 237-39; 33,

¶¶ 255-57). The FAC divided Plaintiffs and the putative classes into two general groups: "Justice-Referred Plaintiffs" and "Walk-In Plaintiffs."

***"Justice-Referred Plaintiffs"***: Plaintiffs Taylor, Lucas, and Burkhart, on behalf of the two Justice-Referred Classes, alleged that they participated in a Rehabilitation Program as part of their prison release, and that they engaged in work therapy for "at least 8 hours a day, and at least 40 hours a week." (*See, e.g.*, AA 26, ¶ 189; 28, ¶ 203; 31, ¶ 233). These Plaintiffs alleged generally that employees of Salvation Army Central used "threats" of prison-release violations and reincarceration if they did not perform work therapy at the Rehabilitation Program. (*See, e.g.*, AA 27, ¶ 191; 29, ¶¶ 212-13; 32, ¶ 242).

***"Walk-In Plaintiffs"***: Plaintiffs Lewis and Page, on behalf of the two Walk-In Classes, alleged that they voluntarily "walk[ed] in" off the street to participate in a Rehabilitation Program, and that they also engaged in work therapy. (*See, e.g.* AA 29, ¶¶ 215, 219; 32, ¶¶ 245, 248). They alleged that employees of Salvation Army Central used "threats" of denying them food, shelter, and access to the Program if they did not perform work therapy at the ARC or one of its thrift stores. (*See, e.g.* AA

29, ¶¶ 217; 30, ¶ 227; 32, ¶ 247; 33, ¶ 258). None of the named Walk-In Plaintiffs alleged being without food, shelter, or clothing before beginning the Rehabilitation Program. Nor did they allege being unable to access food, shelter, clothing, or their government benefits if they decided to leave the Rehabilitation Program early.

Nowhere in the FAC did any of the Plaintiffs state the date, time, place, or means of the alleged "threats," or who specifically at Salvation Army Central made them. They did not allege that employees of Salvation Army Central told them that they could not leave the Program; nor did they allege being subject to force or physical restraint to prevent them from leaving the Program at any time. Two Plaintiffs (Lewis and Page) alleged leaving and returning voluntarily to their respective Rehabilitation Program as repeat participants. (AA 29, ¶ 215; 32, ¶ 245). Another Plaintiff (Burkhart) previously acknowledged leaving his Rehabilitation Program after only "four to five weeks." (ASA[4] 28, ¶ 217). Plaintiffs confirmed they were apprised of the work-

---

[4] "ASA" refers to the Defendants-Appellees' Supplemental Appendix submitted concurrently with this brief.

therapy aspect of the Rehabilitation Program before starting the

Program. (AA 26, ¶182; 28, ¶ 201; 29, ¶ 217; 32 ¶ 247).

## III.  PROCEDURAL HISTORY AND DECISIONS OF THE DISTRICT COURT

Plaintiffs filed their original complaint on November 15, 2021.

(ASA 1-43 ("Original Complaint")). Salvation Army moved to dismiss on

January 7, 2022. Salvation Army argued, among other things, lack of

personal jurisdiction (for Salvation Army National only), lack of subject

matter jurisdiction over all Plaintiffs due to lack of standing and over

Justice-Referred Plaintiffs' claims pursuant to the *Rooker-Feldman*

doctrine, and failure by *all* Plaintiffs to state a claim under Rule

12(b)(6). (Dkt. No. 29-1).

Instead of opposing that motion, Plaintiffs filed a substantially

similar First Amended Complaint, herein the "FAC," on January 28,

2022. (AA 1). The FAC asserted the same five counts as the Original

Complaint, but added a new plaintiff (Lucas) and altered some of the

allegations from the Original Complaint.

On February 18, 2022, Salvation Army moved to dismiss the FAC,

making substantially similar arguments to those made against the

Original Complaint. (Dkt. No. 39-1). Plaintiffs opposed that motion on

March 22, 2022. In their opposition, Plaintiffs did not seek leave to amend the FAC as an alternative request to the court and did not include a proposed second amended complaint. Neither did they explain, in the alternative, how yet another complaint might cure any of the defects identified by Salvation Army's motion, deciding instead to rest on the allegations of the FAC. (Dkt. No. 44).

On September 19, 2022, the district court granted Salvation Army's motion (the "Dismissal Order"). (SA 1). The court held that Justice-Referred Plaintiffs' claims failed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. The court explained that, based on Justice-Referred Plaintiffs' own allegations, they participated in the Rehabilitation Program "because a state court order compelled them to do so." (SA[5] 5). The court found their claims "inextricably intertwined" with the state-court judgment. *Id*.

The court also held that Plaintiffs failed to state a valid claim under Rule 12(b)(6). It determined that the FAC did not allege facts showing that "Defendants obtained [Plaintiffs'] labor through threats of

---

[5] "SA" refers to the Plaintiff-Appellants' "Short Appendix" included with their brief.

serious harm." (SA 8). The court explained that "threats" to remove participants from the Rehabilitation Program and "consequently preventing access to ARC-provided food and shelter would not compel a reasonable person to keep laboring in the ARC program." (SA 9). A reasonable person would simply leave and go elsewhere. (SA 10). The court observed that the FAC contained no allegations that "Plaintiffs' access to food, clothing, and shelter could be withheld from them even after they had left the ARC, or any other allegation indicating that Plaintiffs could not otherwise leave the ARC program." (SA 9). The court also ruled that the FAC failed to plausibly allege that Salvation Army acted with the statutorily required scienter to obtain labor through any "threats of serious harm" in violation of the TVPRA. (SA 10).

Because Plaintiffs had already amended their Original Complaint, and finding that nothing in the FAC suggested that Plaintiffs' pleading deficiencies could be cured, the court denied Plaintiffs leave to amend, entered final judgment, and dismissed the case. (SA 1).

Plaintiffs then filed a motion to alter or amend judgment ("Motion to Alter"), which belatedly sought to amend their FAC. (Dkt. No. 63).

14

Plaintiffs asserted that, with yet another amended complaint, they could avoid application of the *Rooker-Feldman* doctrine for certain Justice-Referred Plaintiffs by claiming that their enrollment in a Rehabilitation Program was the result of a "parole" decision, and not a court order. (Dkt. No. 63 at 6). Plaintiffs further asserted that, with a second amended complaint, they could enhance their allegations that "a reasonable person" in Plaintiffs' circumstances would have felt compelled to stay and participate in work therapy at the ARC. (Dkt. No. 63 at 2). The Motion to Alter did not explain why Plaintiffs were unable to address these defects earlier, before final judgment. And the Motion to Alter did not point to any newly-discovered evidence or intervening changes in law.

The district court denied the Motion to Alter on January 6, 2023. (SA 12) ("Motion to Alter Order"). Plaintiffs' belated request for leave to amend put "the cart before the horse." (SA 12). The court explained that, once judgment is entered, a request for leave to amend could be considered only if Plaintiffs first established that judgment should be opened under Rule 59(e). (SA 12). Plaintiffs failed to meet Rule 59(e)'s high standard because they failed to identify any "mistake of law or

fact" or any "new evidence" that was material that "could not have been discovered previously." (SA 12).

## SUMMARY OF ARGUMENT

***Rooker-Feldman/Subject Matter Jurisdiction*:** The district court correctly ruled that it lacked subject matter jurisdiction over Justice-Referred Plaintiffs' claims under *Rooker-Feldman*. *Rooker-Feldman* divests a federal court of subject matter jurisdiction where a plaintiff's federal-court claims seek relief for asserted injuries caused by a state-court judgment. Justice-Referred Plaintiffs' alleged compulsion to participate in the Rehabilitation Program cannot be divorced from their state-court sentences, which necessarily provided for supervised work release in lieu of prison time. The so-called "injuries" of which Justice-Referred Plaintiffs complain are the logical outcome of their state-court sentences, and nowhere do they allege being deprived of the opportunity to contest those sentences in state court.

***Standing/Subject Matter Jurisdiction*:** To the extent *Rooker-Feldman* does not divest the district court of jurisdiction over Justice-Referred Plaintiffs' claims, the standing doctrine does, just as it does for Walk-In Plaintiffs' claims. There is no dispute Walk-In Plaintiffs

16

voluntarily entered the Rehabilitation Program—in some cases, multiple times. There is no allegation with respect to Walk-In Plaintiffs that anyone was forced to participate; nor is there an allegation that a participant could not leave at any time. For their part, if Justice-Referred Plaintiffs were compelled by their state-court sentence to participate in a Rehabilitation Program, then *Rooker-Feldman* bars their claims. But if the FAC is not fairly read to show Justice-Referred Plaintiffs participated in the Rehabilitation Program by virtue of state-court order, then they lack a TVPRA claim for the same reason as Walk-In Plaintiffs: their participation was necessarily by choice. In all events, subject matter jurisdiction is lacking as to all claims because all Plaintiffs' complained-of injuries are not traceable to any conduct by Salvation Army.

*TVPRA/Rule 12(b)(6)*: The district court correctly ruled that Plaintiffs failed to state a valid TVPRA forced-labor claim. Plaintiffs failed to plausibly plead facts showing that they engaged in "labor or services" as contemplated by the TVPRA while participating in a Rehabilitation Program. Walk-In Plaintiffs failed to plausibly plead facts showing how warnings of early discharge from the Program

constitute "threats of serious harm" and why a person in their circumstances could not just leave the Rehabilitation Program if they desired. Justice-Referred Plaintiffs, likewise, failed to plausibly plead unlawful coercion—absent from the FAC were well-pleaded facts that Salvation Army said anything to them other than advise that they would have to leave the ARC, and as such, risk breaching the terms of their release, if they opted not to participate in the Program's activities. Justice-Referred Plaintiffs furthermore acknowledged in the FAC to participating in the Program, not because of acts by the Salvation Army, but because of the return-to-prison condition of their criminal sentences. All Plaintiffs failed to plausibly plead that Salvation Army acted with scienter to obtain their alleged labor through unlawful means.

*Motion to Alter*: The district court properly denied Plaintiffs' Motion to Alter. The district court's without-leave-to-amend disposition of the FAC was within its discretion. Plaintiffs had already used an opportunity to amend their Original Complaint, and they failed to seek leave to amend or explain why another amendment could save their claims in response to Salvation Army's motion to dismiss their FAC.

Once judgement was entered, Rule 59(e), not Rule 15(a), governed

Plaintiffs' Motion to Alter. Plaintiffs have not even attempted to satisfy

Rule 59(e)'s high standard.

## ARGUMENT

The applicable pleading for the Court's review is Plaintiffs' FAC—

the pleading before the district court on the Dismissal Order. (SA 1).

Plaintiffs are barred from supplementing the allegations in the FAC

with either assertions in their appellate briefing or their proposed

second amended complaint that the district court denied them from

filing (notwithstanding the futility of that proposed pleading). *See*

*Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir.

2012); *Shuler v. Walter E. Heller W. Inc.*, 956 F.2d 1168, n.1 (9th Cir.

1992) (explaining that the court would not consider allegations

contained in an unfiled amended complaint).

## I.     STANDARD OF REVIEW

This Court reviews *de novo* a grant of a motion to dismiss for lack

of subject matter jurisdiction under *Rooker-Feldman* and for failure to

state a claim under Rule 12(b)(6). *Brown v. Bowman*, 668 F.3d 437, 442

(7th Cir. 2012); *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th

1122, 1128 (7th Cir. 2022). To survive a motion to dismiss under Rule

12(b)(6), "a complaint must contain enough factual content to 'state a claim to relief that is plausible on its face.'" *Chamara*, 24 F.4th at 1128 (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotes and citations omitted).

This Court "may affirm dismissal on any ground supported by the record." *Alkady v. Luna*, 803 F. Appx 932, 935 (7th Cir. 2020). Moreover, a plaintiff's standing to bring a federal claim raises a question of subject matter jurisdiction that this Court can review *de novo* and *sua sponte. Id.*; *see also* Fed. R. Civ. P. 12(h)(3).

Denials of Rule 59(e) motions to alter or amend judgment are reviewed under the deferential abuse-of-discretion standard. *Fannon v. Guidant Corp.*, 583 F.3d 995, 998, 1003 (7th Cir. 2009).

## II.  THE DISTRICT COURT PROPERLY GRANTED SALVATION ARMY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT.

A class action complaint lives or dies on the allegations of its named plaintiffs. *See Cowen v. Bank United of Texas*, 70 F.3d 937, 941 (7th Cir. 1995) (explaining that class representatives must have valid

claims for class to be certified). Here, Plaintiffs' claims were fatally flawed due to lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(1), (6), (h)(3).

## A.    The District Court Lacked Subject Matter Jurisdiction.

Plaintiffs failed to carry their burden of showing that the district court had subject matter jurisdiction over their claims. *See Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) ("party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper"). The *Rooker-Feldman* doctrine[6] bars a plaintiff's federal-court claims where the plaintiff lost in state court and the plaintiff's claimed injuries arise from that state-court judgment. *Johnson v. Orr*, 551 F.3d 564, 567–68 (7th Cir. 2008) ("If the injury the plaintiff complains of resulted from, or is inextricably intertwined with, a state-court judgment, then lower federal courts cannot hear the claim"). On that basis, the district court dismissed Justice-Referred Plaintiffs' claims. That decision was correct under this Court's precedents.

---

[6] The doctrine gets its namesake from the Supreme Court decisions *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

But irrespective of *Rooker-Feldman*, the court could have, and should have, dismissed all of Plaintiffs' claims for lack of standing because none of the Plaintiffs pled facts showing that the injuries of which they complain are fairly traceable to Salvation Army. As for Walk-In Plaintiffs, there is no question they participated voluntarily in the Rehabilitation Program. And Justice-Referred Plaintiffs are out of luck either way: either they were compelled to participate by virtue of their state-court sentence, in which case *Rooker-Feldman* bars their lawsuit, or they—like Walk-In Plaintiffs—participated by choice, in which case they also lack standing.

### 1.  *Rooker-Feldman* Bars Justice-Referred Plaintiffs' Claims.

Justice-Referred Plaintiffs do not dispute that they are "state court losers" who were convicted of crimes and sentenced by a state court. *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016). As the FAC shows, their contention that alleged "threats" of incarceration compelled them to participate in the Rehabilitation Program cannot be separated from their state-court sentences. The district court was thus correct that *Rooker-Feldman* barred their claims.

> **(a)** ***Rooker-Feldman* divests a federal court of subject matter jurisdiction where a plaintiff's federal-court claims seek relief for asserted "injuries" caused by a state-court judgment.**

*Rooker-Feldman* bars *de facto* federal court appeals of state-court judgments. *See Sykes*, 837 F.3d at 742; *see also* 28 U.S.C. § 1257. The Seventh Circuit recognizes *de facto* appeals may be presented in different ways. Justice-Referred Plaintiffs' argument that the doctrine only applies where a federal-court plaintiff seeks to directly "reverse" or "overturn" a state-court judgment misapprehends Seventh Circuit case law. *See, e.g., Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019) (the doctrine applies not just where a federal plaintiff directly challenges a state-court order, but also where the plaintiff's federal claim is "inextricably intertwined" with state-court order); *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) ("To make [the *Rooker-Feldman*] determination, we ask whether the federal claims either 'directly' challenge a state court judgment or are "inextricably intertwined" with one"). Justice-Referred Plaintiffs' claims fail on "inextricable intertwinement" grounds.

A claim is "inextricably intertwined" with a state-court judgment where the injuries underlying the federal claim arise from the state-court judgment. *Bowman*, 668 F.3d at 442 ("The determination of whether a federal claim is 'inextricably intertwined' hinges on whether it alleges that the supposed injury was caused by the state court judgment"). In such a case, "*Rooker-Feldman* bars federal review." *Swartz*, 940 F.3d at 391; *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007).

> **(b)**     **The injury claimed by Justice-Referred Plaintiffs for participating in the Rehabilitation Program is a "practical result" of their state-court sentencing judgments.**

Justice-Referred Plaintiffs alleged that they felt compelled to participate in the Rehabilitation Program out of concern for being incarcerated if they failed to abide the conditions of their criminal sentences. (AA 25, ¶ 180; AA 27, ¶¶ 195, 199; AA 29, ¶ 213; AA 30-31, ¶¶ 231-232; AA 32, ¶ 243). Their claimed injury, of course, did not pre-date their state-court sentences and is, in fact, a "practical result" of those sentences. *Swartz at* 391. This conclusion flows directly from sentencing law in Illinois, which relates to the claims of Taylor and

Lucas, and sentencing law in Michigan, which relates to the claims of Burkhart. (AA 25, ¶ 180; AA 27, ¶ 199; AA 30, ¶ 231). In both jurisdictions, *only courts* have the power to impose criminal sentences.[7] And in both jurisdictions, those *court-imposed* sentences can carry with them supervised release orders along with the possibility of prison for violating supervised release. *See* p. 25 n.7, *supra*.

---

[7] In Illinois, only a court may impose a criminal sentence. *See People v. Ruth*, 203 N.E. 3d 933, 939 (Ill. 2022) ("the judiciary holds the exclusive power to impose [a] sentence"). A criminal sentence may include a mandatory supervised release, known as an "MSR," which replaced Illinois' system of "parole" in the late 1970's. *See People v. Lee*, 979 N.E. 2d 992, 1000-01 (Ill. App. Ct. 2012). A "prison term and MSR are a part of the same sentence, not two different sentences." *Id.* at 1000-01. By statute, all MSR sentences carry with them the possibility of incarceration if a prisoner breaches the conditions of his or her MSR. *See* 730 ILCS 5/3-3-9(a) (describing "recommitment" to prison as a condition for breaching terms of MSR).

In Michigan, similar to Illinois, only a court may impose a criminal sentence, which may include probation. *See, e.g. People v. Nevills*, 2016 WL 4212273 at *4 (Ct. App. Mich. 2016) (Under the Michigan Constitution's separation-of-powers, "courts have the power to impose sentence[s] pursuant to the legislatively-created criminal statutes"); *People v. Bensch*, 935 N.W. 2d 382, 384 (Ct. App. Mich. 2019) (describing the court's power to sentence a convicted person to probation). By law, probation sentences carry the possibility of incarceration if a prisoner breaches the conditions of his probation. *See* M.C.L.A. 771.3(2)(a) (describing "imprison[ment]" as a "condition of probation").

Although Justice-Referred Plaintiffs assert that alleged "threats" by Salvation Army Central constitute separate, actionable conduct, this assertion is belied by the plain language of the FAC. It states, no fewer than seven times, that their feeling of compulsion to participate in the Program cannot be divorced from their state-court sentences. (*See, e.g.* AA 3, ¶ 8 ("Participants who are sent to an ARC through the justice system ('justice-referred') do not have a choice about whether they work. *They must report to and participate in the ARC program or they risk violating their terms of parole or probation and reincarceration.*") (emphasis added); *see also* AA 21, ¶ 145; 22, ¶¶ 150-151; 25, ¶ 180; 27, ¶ 199; 30, ¶ 231; 31 ¶ 232).

Justice-Referred Plaintiffs, in essence, *admitted* in their pleading that their state-court criminal sentences caused their alleged injuries. *See Ritter v. Ross*, 992 F.2d 750, 754–55 (7th Cir. 1993) (holding that *Rooker–Feldman* bars subject matter jurisdiction where "but for" the state-court judgment the plaintiff would have no claim). A federal claim seeking damages for an injury caused by a state-court judgment is tantamount to an effective appeal of that judgment and barred by *Rooker-Feldman. Swanson v. Indiana*, 23 Fed. App'x 558, 559 (7th Cir.

2001) (denying claim for personal-injury damages under the doctrine, while noting "[t]he *Rooker-Feldman* doctrine bars claims both for damages and injunctive relief").

### (c) Plaintiffs' arguments against application of *Rooker-Feldman* are unavailing.

Plaintiffs contend that, for *Plaintiffs Taylor and Lucas only*, it was a parole board, and not a state court, that referred them to the Rehabilitation Program, and that this distinction saves them from *Rooker-Feldman*. (Pls.App.Br. at 27).[8] This attempted "parole distinction" mischaracterizes their claimed injury and fundamentally misunderstands Illinois sentencing law.

In Illinois, the Prisoner Review Board oversees prisoners released on mandatory supervised release ("MSR")—a.k.a. "parole." *See Ruth*, 203 N.E. 3d at 938. The Board, however, has no authority to order criminal sentences; only courts have that power, including the power to order sentences that include MSR. *See* p. 25 n.7, *supra*. By law, every MSR carries a return-to-prison condition. As such, the state court's MSR sentence—not the Board—imposed the return-to-prison condition

---

[8] Plaintiffs do not make this argument for Plaintiff Burkhart.

Taylor and Lucas effectively challenge. *See also People v. Mann*, 2020 IL App (5th) 170210-U, ¶ 12 ("The prison sentence and MSR are components of one, and only one, sentence.") Taylor's and Lucas's "parole" distinction is thus a non-sequitur.

Plaintiffs next contend that they "never had an opportunity to raise their forced-labor claims in state court" (Pls.App.Br. at 31), but this argument also fails. This Court's decisions make clear that "if the plaintiff could have raised the issue in state court proceedings, the claim is barred under the *Rooker-Feldman* doctrine." *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004). To demonstrate otherwise, Plaintiffs were required to identify "factor[s] independent of the actions" of Salvation Army, "such as state court rules or procedures" that prevented them from litigating in state court the injuries they now seek to claim in federal court. *Id.* at 534-35. They have not done so.

Indeed, under both Illinois and Michigan law, there is no question that the named Justice-Referred Plaintiffs had the opportunity to contest their criminal sentences in state court. *See e.g.,* 730 ILCS 5/5-4-1 (Illinois sentencing hearing statute); MCR 6.425 (Michigan sentencing

hearing statute). Plaintiffs never pled lacking such an opportunity in their FAC.

Plaintiffs cite three out-of-circuit decisions—*Fochtman*, *Copeland*, and *Burrell* (Pls.App.Br. at 29)[9]—to argue that *Rooker-Feldman* does not apply here. But, unlike in those cases, Justice-Referred Plaintiffs' alleged injuries—the compulsion to work under possibility of imprisonment—arise directly from their state-court sentencing orders. Even the Tenth Circuit in *Copeland* recognized that "[i]f simply performing work under threat of imprisonment were the extent of the injuries that Plaintiffs asserted under their forced-labor claims, the district court may have been correct in concluding that the state-court orders caused the relevant injuries." *Copeland v. C.A.A.I.R.*, 2023 WL 3166345 at * 11 (10th Cir. May 1, 2023). That is precisely the circumstance here.

Justice-Referred Plaintiffs seek relief in the form of damages. Should they be awarded such relief, it would essentially reimburse

---

[9] *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638 (8th Cir. 2022); *Burrell v. Staff*, 60 F.4th 25, 31 (3d Cir. 2023), *cert. denied sub nom. Lackawanna Recycling Ctr., Inc. v. Burrell*, No. 22-1034, 2023 WL 4163249 (U.S. June 26, 2023); *Copeland v. C.A.A.I.R.*, 2023 WL 3166345 (10th Cir. May 1, 2023).

them for how the possibility-of-prison conditions of their state-court sentences made them feel about complying with their MSR conditions. Plaintiffs' TVPRA claims are thus effectively an attack on their state sentences and precluded by *Rooker-Feldman*.

### 2.   All Plaintiffs Lack Standing.

Below, Salvation Army moved to dismiss for lack of standing in addition to the grounds for which the district court dismissed the FAC. (Dkt. No. 39-1 at 22-23). The district court did not rule for Salvation Army on this basis, but because standing goes to the court's jurisdiction, this Court may—indeed, must—consider it if there is any question that subject matter jurisdiction is lacking. *See Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 663-64 (7th Cir. 2021).

To satisfy Article III standing requirements at the pleading stage, a plaintiff must plead facts sufficient to allege "an injury in fact that is traceable to the defendant's conduct ...." *Cassillas v. Madison Ave. Assoc., Inc.,* 926 F.3d 329,333 (7th Cir. 2019); *see also Bennett v. Spear*, 520 U.S. 154, 162 (1997) (standing also requires "that the injury will likely be redressed by a favorable decision."); *DaimlerChrysler Corp. v. Cuno*, 547 U. S. 332, 342 (2006).

The principle of traceability is in essence a question of "but-for causation." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.,* 902 F.3d 735, 743 (7th Cir. 2018). Plaintiffs must allege facts showing that "but-for" defendants' purported illegal conduct, they would not have suffered injury. *Kowalski v. Cook County Officers Electoral Bd,* No. 16-cv-1891, 2016 WL 4765711 at *3 (N.D. Ill. Sept. 13, 2016) ("Article III standing requires 'but-for' causation") (citing *Kyles v. J.K. Guardian Sec. Servs., Inc.* 222 F.3d 289, 294 (7th Cir. 2000)).

All Plaintiffs fail to plausibly allege that the injuries of which they complain are traceable to Salvation Army. In the case of the Walk-In Plaintiffs, there is no question they participated in the Rehabilitation Program voluntarily. There are no allegations they were kidnapped or otherwise forced to participate, and no allegations they were restrained from leaving. Indeed, the FAC reveals that some of them came and went on multiple occasions. (AA 29, ¶ 215; 32, ¶ 245). Thus, to the extent they have suffered any injury from participating in the Program, those injuries are "entirely self-inflicted" and not actionable against Salvation Army. *See Parvati Corp. v. City of Oak Forest*, 630 F.3d 512,

518 (7th Cir. 2010) (no traceability when plaintiff's own claim-splitting strategy caused its later claim preclusion injury).

The same logic applies to the Justice-Referred Plaintiffs. If this Court were to disagree with the district court's reading of *Rooker-Feldman*, then the alternative is to treat Justice-Referred Plaintiffs as similarly situated to Walk-In Plaintiffs and conclude that they, too, lack standing. *Cf. Vaughn v. Phoenix House Programs of New York*, No. 14-CV-3918 RA, 2015 WL 5671902, at *3 (S.D.N.Y. Sept. 25, 2015) (dismissing Thirteenth Amendment claim, noting that participation in work-rehabilitation program in lieu of jail time was "voluntary"), *aff'd in relevant part by Vaughn v. Phoenix House New York*, 722 Fed. App'x 4 (2d Cir. 2018).

No reasonable inference can be drawn from the FAC that Salvation Army is the cause of Plaintiffs' alleged injuries. The FAC states that Salvation Army is "clear about the terms" of enrolling in the Rehabilitation Program. (AA 5, ¶ 21). Knowing this, Plaintiffs voluntarily enrolled (or were compelled by state-court order to enroll) in the Program. To be clear, Salvation Army sees voluntary enrollment as a good thing. But if Plaintiffs are now second-guessing their decisions,

that is not the fault of Salvation Army. *See Markakos v. Medicredit, Inc.*, 997 F.3d 778, 781 (7th Cir. 2021) (dismissing plaintiff's complaint for lack of Article III standing where "[Plaintiff] has not alleged any way in which the alleged misinformation in [Defendant's] letters injured her"); *Beaulieu v. Ashford Univ.,* 529 F. Supp. 3d 834, 845-46 (N.D. Ill. 2021) (dismissing plaintiff's complaint for lack of Article III standing where plaintiff failed to plead facts showing that the defendant "directly caused any of Plaintiff's injuries" or that the defendant "contributed to any of Plaintiff's alleged injuries").

### B.   Plaintiffs' FAC Failed to State a Valid TVPRA Claim for Their Participation in the Rehabilitation Program.

Jurisdiction aside, *all* Plaintiffs failed to state a valid TVPRA claim, and the Court may uphold the district court's dismissal on that basis alone. *See Alkady*, 803 F. App'x at 935.

The TVPRA is primarily concerned with "victim[s] of involuntary servitude or [ ] victim[s] of international human trafficking." *Lopez v. Miller*, No. 17-CV-2268, 2017 WL 11472556 at *2 (C.D. Ill. Nov. 29, 2017). It was "passed to implement the Thirteenth Amendment against slavery or involuntary servitude." *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (quotes and citations omitted). Plaintiffs' assertions

are a far cry from that. Plaintiffs simply want to reap the secondary benefits of the Program (food, shelter, alternative to prison) without participating in rehabilitative work therapy designed to help their recovery. This has nothing to do with the Thirteenth Amendment. Indeed, "[t]he remedy for truly forced labor should be termination of the [relationship] and the freedom to go elsewhere." *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1016 (S.D. Ind. 2007).

Plaintiffs' claims are all anchored on a TVPRA Section 1589(a) "forced labor" claim against Salvation Army Central—without this underlying claim, all of their other claims fail. *See infra*, Section II.C. Before the district court, they were required to adequately plead that Salvation Army Central (1) obtained their "labor or services," (2) by the means of unlawful coercion enumerated in the statute, and (3) that Salvation Army Central did so "knowingly." *Harris v. Henry*, No. 1:22-CV-00366-LY, 2022 WL 16825200, at *4 (W.D. Tex. Nov. 7, 2022), *report and recommendation approved*, 2023 WL 3035423 (W.D. Tex. Jan. 11, 2023). Plaintiffs needed to plead facts sufficient to satisfy these elements to "state a claim to relief that is plausible on its face."

*Chamara*, 24 F.4th at 1128 (quotes and citation omitted). The district court correctly held that they failed to do so.

> **1.      Plaintiffs Failed to Plausibly Plead Facts Showing That They Engaged in "Labor or Services" by Participating in the Rehabilitation Program.**

Although not addressed by the district court, as a threshold matter Plaintiffs failed to even plausibly allege that they engaged in "labor or services" during their participation in the Rehabilitation Program. §1589(a). "Work" performed for a plaintiff's own benefit does not support a cognizable forced labor claim. *See Saraswat v. Bus. Integra, Inc.*, No. 15-CV-4680, 2019 WL 1865193 at *7 (E.D. N.Y. Apr. 25, 2019) (plaintiff did not perform "labor" or "services" within the meaning of the TVPRA where the "work" was for plaintiff's own benefit). Here, work therapy effectuates the Rehabilitation Program's objective of helping individuals reintegrate into society by cultivating self-esteem and good work habits. "Labor or services" can only be performed by *true laborers*, and Plaintiffs failed to allege how beneficiaries of a residential rehabilitation program fit the bill.

The relationship between the plaintiff and defendant is key to understanding whether "labor or services" have been performed. *See*

*U.S. v. Toviave*, 761 F.3d 623, 630 (6th Cir. 2014) (children performing household chores does not violate Section 1589(a)). This Court has recognized that many types of relationships are fundamentally different from the world of employment. *See e.g. Hollins v. Regency Corp.*, 867 F.3d 830, 836 (7th Cir. 2017) (students' work provided them "supervised practical experience" and did not form an employment relationship); *Berger v. Nat'l Collegiate Athletic Ass'n,* 843 F.3d 285, 290 (7th Cir. 2016).[10]

The Ninth Circuit recognized a similar distinction in a leading Fair Labor Standards Act case involving a Salvation Army entity. The court concluded that the work therapy performed by participants at a Rehabilitation Program is "solely rehabilitative" for the participant's own benefit and thus not compensable "work." *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996).

Work therapy is not performed to benefit Salvation Army, but rather to give participants "a sense of self-worth [and] accomplishment"

---

[10] *Accord Doyle v. City of New York,* 91 F. Supp. 3d 480, 487-88 (S.D.N.Y. 2015) (community service work performed as an alternative to incarceration) and *Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.,* 856 F. App'x 445, 453-56 (4th Cir. 2021) (work performed as a requirement of living in a homeless shelter).

and enable them to "overcome [their] drinking problems . . . ." *Id*.;

*Johnson v. Salvation Army*, 957 N.E.2d 485, 491 (Ill.App. 1 Dist. 2011)

("While performing work therapy, plaintiff received training in skills

necessary to secure employment upon leaving the program. The work

therapy and skills training were necessary for plaintiff, who had not

held a job in over 30 years.")

Although work therapy is one element of the Rehabilitation

Program, it does not define Plaintiffs' relationship with Salvation Army

Central. Other courts have recognized the rehabilitative nature of the

Rehabilitation Program, including courts in this Circuit. *See, e.g., Patel*

*v. The Salvation Army*, No. 03 C 9422, 2004 WL 2632923, at *1 (N.D.

Ill. Nov. 17, 2004) (Rehabilitation Program "provides rehabilitation

services to men seeking to recover from addiction to alcohol or drugs.");

*Schleicher v. Salvation Army*, 518 F.3d 472, 477 (7th Cir. 2008) ("The

rehabilitation centers are self-contained religious communities for their

residents, whom the Salvation Army is trying to save. The centers

include a chapel as well as living and dining areas, and the residents

pursue courses of religious studies and devotions along with undergoing

work therapy . . ."); *see also Salvation Army v. Department of*

*Community Affairs*, 919 F.2d 183, 188-89 (3d Cir. 1990) (describing the ARCs and their rehabilitation program).

Plaintiffs fail to show why this *judicial understanding* of the Rehabilitation Program does not apply here. Aside from conclusory allegations that work therapy reduced Salvation Army Central's payroll allowing it to "repurpose funds," the FAC was devoid of any well-pleaded facts showing how their participation primarily inured to Salvation Army's financial benefit and not their own rehabilitation. (AA 24, ¶ 172). Plaintiffs' Section 1589(a) claims fail on this threshold issue.

> **2.    Plaintiffs Failed to Plead Facts Plausibly Alleging That Salvation Army Central Engaged in Any Unlawful Means of Coercion During Their Participation in the Rehabilitation Program.**

As the district court correctly observed, Plaintiffs made no allegation based on force or restraint, nor did they allege that Salvation Army Central obtained their labor by *actually inflicting* serious harm or *abusing* the law or legal process. Instead, Plaintiffs' claims depended on plausibly alleging that Salvation Army Central: (1) threatened them with serious harm; (2) employed a scheme intended to cause Plaintiffs to believe they would suffer serious harm; and/or (3) threatened that

Salvation Army Central would abuse the legal process. § 1589(a)(2)-(4). None of these theories works for them.

> **(a)    Walk-In Plaintiffs failed to plead facts showing that warnings of early discharge from the Rehabilitation Program constitutes "threats of serious harm."**

To be actionable, threats of harm under Section 1589(a) must be "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." § 1589(c). The district court properly concluded that Walk-In Plaintiffs failed to meet this standard. (SA 12).

By definition and admission, Walk-In Plaintiffs voluntarily joined the Rehabilitation Program. (AA 34, ¶ 264). Plaintiffs acknowledged that the Program is short-termed, generally lasting only six months. (AA 16, ¶ 105). And they confirmed being apprised of the Program's work-therapy component before participating. (AA 29, ¶ 217, 32 ¶ 247). Nevertheless, they assert—in conclusory terms only—that they were threatened with "serious harm" if they did not participate in work therapy because if they were discharged from the Program they would

lose access to its incidental benefits, like food, clothing, and shelter. (Pls.App.Br. 38). The district court was right to conclude that these allegations fail to plausibly constitute "threats of serious harm" under the TVPRA— "there is no allegation that Plaintiffs' access to food, clothing, and shelter could be withheld from them even after they had left the ARC program…" (SA 9). And it cannot possibly be a "threat" of serious harm to simply state the obvious: if you leave this Program, this Program can no longer feed, clothe, or shelter you. The result of leaving would be life without the Rehabilitation Program—if that life poses "serious harm" it cannot possibly be *because of* Salvation Army Central.

> **(i)   The law permits warnings of adverse but legitimate consequences, and Walk-In Plaintiffs' allegations about the Rehabilitation Program amount to nothing more than that.**

Courts have consistently explained that "warnings of adverse but legitimate consequences" are not actionable under the TVPRA. *Headley v. Church of Scientology Intern.*, 687 F.3d 1173, 1180 (9th Cir. 2012) (the law distinguishes between "[i]mproper threats or coercion and permissible warnings of adverse but legitimate consequences") (quotes and citations omitted); *Muchira*, 850 F.3d at 624 (same); *DeSilva v. N.*

*Shore-Long Island Jewish Health Sys., Inc.*, No. 10-CV-1341 JFB ETB, 2012 WL 748760, at *7 (E.D.N.Y. Mar. 7, 2012) (same).

The plausibility of Plaintiffs' "serious harm" theory crumbles with context. Walk-In Plaintiffs assert that "[t]hreatening people with the loss of food, clothing, and shelter unless they perform labor falls comfortably within the TVPRA's definition of 'serious harm.'" (Pls.App.Br. 38). But as courts have recognized, the purpose of the Rehabilitation Program is *rehabilitation*—of the full-time, residential, and religious variety. The Rehabilitation Program is not a homeless shelter, food bank, or long-term free housing option. The FAC did not even specify why either of the Walk-In Plaintiffs decided to participate in the first place. To the extent they sought to extract *only* auxiliary benefits the Rehabilitation Program offers (a bed, food, clothing) without intending to actively participate in the full range of faith-based rehabilitative services provided and required by the Rehabilitation Program, they enrolled in the wrong program: One doesn't go to a hospital ER and then complain when the doctor says they then need to be medically evaluated. *See Panwar v. Access Therapies, Inc.*, No. 1:12-CV-00619-TWP, 2015 WL 1396599, at *3 (S.D. Ind. Mar. 25, 2015)

("While Plaintiffs continually refer to their employment with [Defendants] as a 'forced labor scheme,' the fact that they voluntarily entered into the employment contracts belies this characterization.")

Plaintiffs effectively argue that Salvation Army Central forced their labor by offering Rehabilitation Program beneficiaries food and shelter because it allows hungry and unhoused individuals to enroll. This is nonsense. The Illinois Court of Appeals rejected this exact argument levied against the Rehabilitation Program:

> Plaintiff contends that he and other beneficiaries of the program, as unemployed, homeless, and substance-abusive applicants, had no free choice or reasonable alternative in bargaining with defendant over the conditions of enrollment in the program. Plaintiff argues that he had no free choice because, "[e]ssentially, the applicant must accept the terms of the Salvation Army, including the exculpatory agreement, or be denied food and shelter. If an applicant rejects the 'agreement,' he is returned to the homeless and foodless environment from which he came." Plaintiff's argument fails . . .
>
> First, defendant did not offer plaintiff food and shelter, or "the necessities of life." Rather, these benefits were merely incident to the rehabilitation program. Defendant does not offer room and board to individuals, but offers its beneficiaries an opportunity to participate in the rehabilitation program. In signing the agreements and being accepted into the program, plaintiff agreed to participate in the rehabilitation program, which happened to include room and board.

*Johnson*, 957 N.E.2d at 492.

42

Plaintiffs' allegations amounted to nothing more than the unremarkable assertion that Walk-Ins who refuse to abide by Program rules risk expulsion, which necessarily entails losing access to the Program's benefits. Plaintiffs are not entitled to those benefits, and they cannot cherry pick the food and shelter offered by the Rehabilitation Program while ignoring the context in which they are provided. *See Dart*, 803 F.3d at 314–15 (where plaintiff "did not have a right to the[] special privileges . . . loss of the[] privileges does not constitute punishment" that legally "compelled" him to work.) Courts have held in analogous circumstances that a warning that an individual's housing is in jeopardy cannot be considered an unlawful "threat" if the loss of housing would be a *legitimate consequence*:

> Where eviction is, or becomes, a lawfully available remedy for landlords, plaintiffs point to no case in which simply referencing a legal remedy has ever been treated as "threatening" under applicable law. Rather, the law has long distinguished between communications putting someone wrongfully in fear of injury and those simply apprising of legal consequences.

*Melendez v. City of New York*, 16 F.4th 992, 1012 (2d Cir. 2021) (collecting cases); *see also Melendez v. City of New York*, 503 F. Supp. 3d 13, 29 (S.D.N.Y. 2020), *aff'd in relevant part,* 16 F.4th 992 (2d Cir. 2021)

(concluding that warning of eviction for failure to pay rent is legitimate and lawful, notwithstanding that being evicted from one's home is harmful).

Plaintiffs suggest that their case involves "subtle methods" of coercion that Section 1589 was created to address. (Pls.App.Br. 32-36). But neither the legislative history nor the cases they cite support their assertion. In H.R. Rep. No. 106-939, the House of Representatives provided examples of the kinds of psychological coercion that the law was created to target, such as:

- "when a nanny is lead to believe that children in her care will be harmed if she leaves the home";

- "intentionally causing [a] victim to believe that her family will face harms such as banishment, starvation, or bankruptcy in their home country"; and

- "where children are brought to the United States and face extreme nonviolent and psychological coercion (e.g., isolation, denial of sleep, and other punishments)."

None of these examples discusses anything remotely close to early discharge from a residential rehabilitation program. The same goes for

the TVPRA cases cited in Plaintiffs' brief.[11] For example, *Calimlim* concerned deportation threats to a woman whose family in the Philippines depended on her wages for 19 years (Pls.App.Br. 35); *Bistline* concerned sexually abused minors who lived in the FLDS Church for years and alleged no choice but to comply with orders from the Church because the Church *"was their 'retirement plan'"* and owned their property*"* (Pls.App.Br. 35, 38); and *Rivera* concerned undocumented persons who were threatened with or subjected to physical violence if they did not comply with the defendants' instructions. (Pls.App.Br. 39, 40). The intense psychological and physical coercion reflected in these cases cannot be reasonably compared to the prospect of early discharge from a six-month Rehabilitation Program.

Walk-In Plaintiffs' claims stretch the TVPRA far beyond any reasonable bounds, exposing any work-exchange program, rehabilitation or otherwise, that involves both work and the provision of food and housing to potential liability. Consider AmeriCorps' National

---

[11]*United States v. Calimlim*, 538 F.3d 706, 712 (7th Cir. 2008); *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019); *United States v. Rivera,* 799 F.3d 180, 187 (2d Cir. 2015).

Civil Community Corps ("NCCC"). AmeriCorps NCCC is a *federally funded and operated* ten-month service program that provides food, shelter, clothing, and healthcare benefits to its Corps. The Corps is congressionally mandated under 42 U.S.C. § 12613(c) to *recruit disadvantaged youth* (defined, *inter alia*, as homeless, disabled, unemployed, or aging out of foster care) so that they comprise 50% of the Corps. It requires members to work full-time—usually performing manual labor—while paying them $13 a day *before taxes*.[12]  Plaintiffs' warped interpretation of the TVPRA would expose AmeriCorps to possible liability any time it warned a Corps member that he or she could be dismissed for failing to abide by program rules. That cannot be right. This Court does not construe statutes in "a way that leads to absurd results." *Zbaraz v. Madigan*, 572 F.3d 370, 387 (7th Cir. 2009).

Walk-In Plaintiffs try to spin away from acknowledging that they enrolled in a residential rehabilitation program, and instead try to make their claim about "threats" of losing food, clothing, and shelter, which they say constitute a cognizable claim. But, as the district court

---

[12] *See* https://my.americorps.gov/trust/help/member_portal/what_is_the_living_allowance_for_nccc_members.htm.

recognized, more than spin is needed to state a valid claim under Rule 12(b)(6). "*Twombly* and *Iqbal* establish that an obvious alternative explanation for a defendant's conduct that precludes liability can undermine the claim's plausibility," and that such "*alternative explanations must be overcome at the pleadings stage.*" *Hughes v. Northwestern Univ.*, 63 F.4th 615, 629 (7th Cir. 2023) (emphasis added).

Plaintiffs failed to do that. They failed to allege the date, time, or place of the alleged "threats." They did not identify the individual(s) at Salvation Army Central who purportedly made them. And they provided no specification as to what was communicated that constituted "threats" or the means by which "threats" were communicated. This is insufficient. *See, e.g., Roman v. Tyco Simplex Grinnell*, No. 8:16-CV-3449-T-33AEP, 2017 WL 2427251 at *5 (M.D. Fla. June 5, 2017) (dismissing Section 1589 claim with prejudice where plaintiff failed to allege "who threatened him," "how he was threatened," admitted that he was free to leave, and acknowledged that he left voluntarily). In short, Plaintiffs failed to plausibly allege anything more than being warned of early discharge from a rehabilitation program. This is not actionable conduct under the TVPRA.

**(ii)  Walk-In Plaintiffs failed to plausibly plead why a reasonable person in their circumstances would not just leave the Rehabilitation Program.**

Walk-In Plaintiffs also failed to adequately allege that the Rehabilitation Program rules constitute "threats of serious harm"; their allegations fail to plausibly support the inference that a "reasonable person" in their position would have felt compelled to labor to avoid program dismissal. § 1589(c)(2). This was the primary rationale of the district court's 12(b)(6) ruling. (SA 9-10). As the district court reasoned, "[c]ritically, there is no allegation that Plaintiffs' access to food, clothing, and shelter could be withheld from them *even after they had left the ARC program* or any other allegation indicating that Plaintiffs *could not otherwise leave* the ARC program." (SA 9, emphasis added). Fatally, Plaintiffs are unable to counter this point. *See Schrader v. Wynn*, No. 219CV2159JCMBNW, 2021 WL 619376, at *6 (D. Nev. Feb. 17, 2021) (no claim where plaintiffs' allegations were "not enough to plausibly support an intentional threat of serious harm that compelled her . . . to keep working when [she] otherwise would have left."); *Stillwell v. Fashion Nova, LLC*, No. CV 21-7040-GW-MARX, 2022 WL

48

2965394, at *11 (C.D. Cal. Jan. 28, 2022) (same). Each of their specific arguments fails.

Plaintiffs initially suggest that the Rehabilitation Program's protocols—such as an initial 30-day blackout period, temporary forfeiture of government support benefits, and temporary prohibition on employment—made them "vulnerable" such that they could not reasonably leave the Program early. (Pls.App.Br. 39). They are wrong.

*On the blackout period*, Plaintiffs failed to plead facts to support their conclusory assertion that the blackout period is a form of "psychological coercion" (Pls.App.Br. 45) "designed to make workers fully reliant on the program" rather than a standard policy for many rehabilitation programs that require their participants to reset their habits. (AA 4, ¶ 17). Tellingly, Plaintiffs did not allege that individuals are not free to quit the Program at any time for any reason. As the district court concluded, a reasonable person would have left during the blackout period if they wanted to. (SA 10).

*On the temporary forfeiture of government benefits*, Plaintiffs' brief largely ignores what they plainly conceded in their FAC: that Salvation Army Central used the benefits to purchase food for Program

participants, and that "workers . . . receive their [SNAP/food stamps] benefit card [when] they leave the program." (AA 19, ¶ 131).

*On the temporary employment prohibition*, these policies are consistent with a residential rehabilitation environment. A plaintiff's TVPRA claim properly fails when "the gravamen of [his complaint] is that he was simply not paid the wages he was owed." *Arellano v. Marshalls of MA, Inc.*, No. 117CV00046TLSSLC, 2018 WL 1120870, at *5 (N.D. Ind. Feb. 2, 2018), *report and recommendation adopted*, No. 1:17-CV-46-TLS, 2018 WL 1072530 (N.D. Ind. Feb. 27, 2018) (quotations and citations omitted). Plaintiffs do not allege that Salvation Army Central prevented them from accepting outside employment at any time if they chose to quit the Program. As the district court concluded, "these are not serious harms under the TVPRA. A reasonable person in the Plaintiffs' position would leave the Program and obtain a higher paying job elsewhere if the ARC's gratuity policy prevented them from building their savings." (SA 10). And Plaintiffs' allegations fall short of viable claims of "financial coercion" under the TVPRA, which are characterized by conduct that, by itself, saddles plaintiffs with severe indebtedness. *See Arellano*, 2018 WL

1120870 at *4-5; *see also Roman v. Tyco Simplex Grinnell*, 732 F. App'x 813, 817 (11th Cir. 2018) (affirming 12(b)(6) dismissal of forced labor claim because Plaintiff did "not explain how the potential financial harm he might have suffered would be any more serious than the financial harm any employee encounters when faced with termination.")

Plaintiffs' next argument, that the district court "declined to consider" their preexisting "unique vulnerabilities" that reasonably prevented them from leaving the Rehabilitation Program, is also unavailing. (Pls.App.Br. 15). The FAC failed to make any allegations of "unique vulnerabilities" specific to the named Plaintiffs. Plaintiffs concede that the FAC did not "expressly allege" that either of the named Walk-In Plaintiffs would lack access to food, clothing, or shelter if they left the Program early. (*See* Pls.App.Br. 15). Their argument is thus dead on arrival.

The district court properly evaluated Walk-In Plaintiffs' "serious harm" theories, and their argument that the district court impermissibly "interpret[ed] . . . facts" and "declined to accept the plaintiffs' allegations is ill-founded. (Pls.App.Br. 43, 45). The court accepted as true the underlying facts Plaintiffs contend support their

51

claim: that the Rehabilitation Program pays small gratuities, does not permit outside employment, takes temporary possession of government benefits, and implements a standard blackout period upon admission, and that Walk-In Plaintiffs "were solicited by Defendants to participate on account of Walk-In Plaintiffs' economic vulnerabilities". (SA 1, 9-10). Contrary to Plaintiffs' assertion, the court expressly considered the Walk-In Plaintiffs' generally-alleged "unique vulnerabilities" despite their lack of specificity. (SA 10-11) (noting that even if Plaintiffs had so alleged "unique vulnerabilities" they still failed to plead threats of "serious harm").

The court simply (and correctly) did not agree with Plaintiffs' *legal conclusion* that these facts constitute unlawful "sustained and targeted financial" and "psychological coercion" under the TVPRA. (Pls.App.Br. 44-45)

Further, the alleged "legal errors" Plaintiffs claim the district court committed would not "independently warrant[] reversal," even

52

had they occurred. (Pls.App.Br. 41). This Court "may affirm dismissal on any ground supported by the record." *Alkady*, 803 F. App'x at 935.[13]

> **(b)** **Justice-Referred Plaintiffs failed to plead facts showing that Salvation Army Central threatened them with serious harm or threatened to abuse the law or legal process.**

The district court did not specifically address the 12(b)(6) defects with the claims of Justice-Referred Plaintiffs, properly dismissing them instead on *Rooker-Feldman* grounds. But their claims fail under Rule 12(b)(6) just the same, even if permitted past the *Rooker-Feldman* bar.[14]

Justice-Referred Plaintiffs alleged that Salvation Army Central "threatened" them with "serious harm" and "abuse of law" by allegedly advising them that if they did not participate in the Rehabilitation Program they risked incarceration. These assertions do not constitute a cognizable claim under the statute.

---

[13] Plaintiffs' argument that "serious harm" allegations can only be evaluated by a jury is wholly unsupported. Plaintiffs' claims are subject to court review for plausibility; their citations to summary judgment decisions allowing *factual disputes* to proceed to a jury are inapposite. (Pls.App.Br. 43).

[14] *See Alkady*, 803 F. App'x at 935.

Courts have held that participating in a work-rehabilitation program in lieu of jail time, though a painful choice, is still a "voluntary" one. *See Vaughn*, 2015 WL 5671902 at * 6 (dismissing Thirteenth Amendment claim, noting that participation in work-rehabilitation program in lieu of jail time was "voluntary"). This rationale defeats Justice-Referred Plaintiffs' claims—a choice cannot be both voluntary and coerced. *See Panwar*, 2015 WL 1396599, at *3.

The same circumstances apply to Justice-Referred Plaintiffs. For Taylor and Lucas, under Illinois law, participation in an MSR in lieu of prison is a voluntary choice. *See, e.g. People v. Wilson*, 228 Ill. 2d 35, 37 (2008) (in Illinois, a prisoner must agree to the conditions of their "mandatory supervised release" before being released from the physical custody of the Department of Corrections). For Burkhart, under Michigan law, participation in probation in lieu of prison is a voluntary choice. *See Bensch*, 328 Mich. App. at 13 (in Michigan, a defendant "may decline a sentence of probation and instead seek a sentence of incarceration"). Justice-Referred Plaintiffs' claims also fail for several additional reasons.

54

*First*, under Section 1589, the "[t]hreatened abuse of law or legal process" must be in a "manner or for any purpose *for which the law was not designed*, in order to exert pressure on another person *to cause* that person to take some action or refrain from taking some action." § 1589(c) (emphasis added).

A private operator of a work-rehabilitation program is permitted to advise a participant that he or she may leave a program despite the possible consequence of further jail time. *See Vaughn*, 2015 WL 5671902 at * 6. Absent from the FAC were well-pleaded facts that Salvation Army Central said anything to Justice-Referred Plaintiffs other than provide them with accurate information about the "adverse but legitimate consequences" of their failure to participate: they would have to leave the Rehabilitation Program, and as such, risk breaching the terms of their supervised release and going back to jail. *See Pasamba v. HCCA Int'l, Inc.*, No. CV-08-0247-PHX-NVW, 2008 WL 2562928, at *6 (D. Ariz. June 24, 2008) (warning that Plaintiff could be deported if her employment terminated did not state a forced-labor claim because "warning of adverse but legitimate consequences to

terminating her employment prematurely would not constitute abuse of process.")

Plaintiffs' allegation that Salvation Army abused the legal process by being "in constant contact" with beneficiaries' parole or probation officers and informing them when they are discharged also fails. (AA 4, ¶ 14; Pls.App.Br. 8). "Plaintiffs conflate the 'use' of legal process with the 'abuse' of legal process." *Panwar*, 2015 WL 1396599 at *5. Where a "requirement is mandated by law"—such as Salvation Army reporting to the Prisoner Review Board that a Justice-Referred Plaintiff is no longer enrolled in the Rehabilitation Program—it "cannot also be an abuse of the legal process." *Id.* (rejecting Plaintiff's argument "that the 'routine' filing of lawsuits against employees" who breached their contracts constituted an abuse of legal process.); *Tegete v. Maryknoll Sisters of Saint Dominic, Inc.*, No. 20-CV-5023 (CS), 2023 WL 2504744, at *11 (S.D.N.Y. Mar. 14, 2023) (allegations that Defendant "'h[ad] her sign a document stating that she would be deported if she was dismissed from Maryknoll or left,' [] fails to constitute an actionable legal threat as contemplated by the TVPRA" because the document "simply recites the substance of federal regulations" requiring a visa

holder's employer to notify DHS when the employee quits or is terminated.) Enforcement of MSR conditions is "exactly the end that the legal process at issue was designed to accomplish." *Panwar*, 2015 WL 1396599 at *5.

*Second*, for an alleged "threat" to be actionable it must be used to *"to cause that person to take some action or refrain from taking some action.*" § 1589(c) (emphasis added). Justice-Referred Plaintiffs' claims failed to adequately plead this causal element for the same reasons the Court lacks jurisdiction under *Rooker-Feldman*. Their state-court sentences required that they return to prison if they did not comply with the conditions of supervised release; that is the source—or "cause"—of the "threat" the Justice-Referred Plaintiffs complain of, not Salvation Army Central. Indeed, the FAC acknowledged that they participated in the Rehabilitation Program, and the work therapy it involves, because of the return-to-prison condition of their criminal sentences. *See* Section II.A.1.b at p. 24, *supra*.

*Third*, interpreting Salvation Army Central's "warnings of adverse but legitimate consequences" to constitute unlawful forced-labor threats would impermissibly stretch the TVPRA well beyond its Thirteenth

Amendment moorings. *Headley*, 687 F.3d at 1180; *Vaughn*, 2015 WL 5671902 at \*6-7. Congress passed Section 1589 pursuant to its powers under the Thirteenth Amendment, which explicitly exempts from its reach labor as punishment for those duly convicted of a crime. *See* U.S. Const. Amend. 13, sec. 1*; Toviave,* 761 F.3d at 629 (explaining that Section 1589 was "passed to implement the Thirteenth Amendment…") Accordingly, several courts have explained that the TVPRA does "not apply to work specifically excepted by Section 1 of the Thirteenth Amendment," which exempts from its reach work as part of a criminal sentence. *Crowe v. Dir.*, *TDCJ-CID*, No. 6:16CV491, 2018 WL 7814730 at \*2 (E.D. Tex. Sept. 18, 2018); *Manley v. Indiana Dept. of Correction*, No. 3:13-CV-1308 JD, 2015 WL 4077243 at \*1 (N.D. Ind. July 6, 2015) (same).

### (c)    Plaintiffs admitted leaving the Rehabilitation Program early.

Plaintiffs' failure to plead forced labor is confirmed by pleading allegations showing that they could (and did) voluntarily quit the Rehabilitation Program, and that two Plaintiffs even opted to return as repeat participants. Plaintiff Burkhart has admitted that he left the Rehabilitation Program after only "four to five weeks." (ASA 28,

¶ 217).[15] Plaintiff Lewis has admitted participating in the Rehabilitation
Program in 2015, leaving, and then returning to the Program in 2019.
(AA 29, ¶ 215). And Plaintiff Page has admitted participating in the
Rehabilitation Program off-and-on "at various times from 1999 until
2017." (AA 32, ¶ 245).

"[F]acts showing that [the working relationship] was voluntary—
like [Plaintiff]'s early departure—undermine any argument that a
plaintiff faced serious economic harm sufficient to trigger the TVPA."
*Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-41-BJB, 2023 WL
359559, at *10 (W.D. Ky. Jan. 23, 2023).

---

[15] This admission comes from Plaintiffs' Original Complaint, which the
Court may consider, even though Plaintiffs studiously deleted it in their
FAC in response to Defendants' first motion to dismiss. *See Ashley v.
United States*, No. 1:20-CV-0154-SWS/MLC, 2020 WL 8996805 at * 7 n.
8 (D.N.M. Nov. 2, 2020) (noting that courts "need not ignore the
allegations in the original complaint where a plaintiff blatantly changes
his statement of the facts in order to respond to the defendant's motion
to dismiss").

### 3. Plaintiffs Failed to Plead Facts Showing That Salvation Army Central Had Scienter to Threaten Plaintiffs with Serious Harm.

The district court also properly determined that Plaintiffs' forced-labor claim failed because the FAC lacked any well-pleaded facts satisfying Section 1589(a)'s scienter requirement.

To set forth a valid Section 1589(a) claim, a plaintiff must validly plead that a defendant "*knowingly*" obtained labor of a person by a prohibited means of coercion. § 1589(a). The scienter element is the "linchpin" of a forced-labor claim, and demands that a defendant *intend* that its conduct "achieve an end prohibited by law." *United States v. Dann*, 652 F.3d at 1170 ("The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her."). As this Court recognized in *United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008), the scienter requirement is necessary to prevent Section 1589(a) from running afoul of the First Amendment: "Because of the *scienter* requirement, any speech involved must be a threat or else intended to achieve an end prohibited by law." 538 F.3d at 711-12.

A plaintiff must plausibly plead scienter under the "strictures" of Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). This standard required Plaintiffs to plead facts sufficient for the district court to "reasonably infer that a party acted with the requisite state of mind." *Simonian v. MeadWestvaco Corp.*, 812 F. Supp. 2d 925, 928-29 (N.D. Ill. 2011).

As was the case here, forced-labor claims often fail the scienter requirement. *See, e.g., Thornton v. Daly City*, No. 19-CV-07638-HSG, 2021 WL 965365, at * 8 (N.D. Cal. Mar. 15, 2021) (dismissing forced-labor claim where there were "insufficient allegations to plausibly suggest that [the defendant] obtained labor by the means listed in the statute…with the required state of mind"); *Mallela v. Cogent Infotech Corp.*, No. 2:19-CV-01658-NR, 2020 WL 2541860 at * 4 (W.D. Pa. May 19, 2020) (dismissing forced-labor claim where the complaint "fail[ed] to set forth any allegations of bad intent or scienter" by the defendant); *see also Muchira*, 850 F.3d at 622 (affirming summary judgment for lack of evidence that the defendant "knowingly subjected [plaintiff] to those conditions as a means to coerce her into staying when she otherwise would have left").

The district court properly determined that "the [FAC] is devoid of any allegation indicating that the policies and other parameters of the [Rehabilitation Program] were *intended* to obtain Plaintiffs' labor through threats of serious harm." (SA 10); *see Tegete*, 2023 WL 2504744 at *11 ("[E]ven if Plaintiff for some reason subjectively believed that she would be destitute if she returned to Tanzania, she has offered no plausible allegations as to why Defendant would share that view or, indeed, any evidence at all that Defendant had the intent that § 1589 requires.") Plaintiffs do not contest this conclusion in their brief, and effectively ignore the district court's scienter ruling.[16]

## C.  Plaintiffs' Remaining TVPRA Claims Were Properly Dismissed as Derivative of the Forced-Labor Claim.

The district court properly found that Counts Two through Five were all derivative of Plaintiffs' Section 1589(a) claim, and accordingly must fail along with it. (SA 11). Plaintiffs do not dispute this ruling except with respect to Plaintiffs' "Attempted Trafficking" claim, which they assert stands on its own. Not only is Plaintiffs' "attempt" claim

---

[16] Plaintiffs address it only in a footnote in which they dismiss it as dependent on the district court's conclusion that they had not plausibly alleged threats of serious harm. (Pls.App.Br. 15, n.5).

also derivative, it fails as a matter of law because no civil cause of action for "attempted" forced labor exists. *See Barrientos v. CoreCivic, Inc.*, No. 4:18-CV-70 (CDL), 2023 WL 2666852, *4 n.4 (M.D. Ga. March 28, 2023) (Section 1595(a) "only provides a civil remedy for an 'individual who is a *victim of a violation*' of the TVPA," not an attempted violation) (emphasis added). Plaintiffs who were not actually forced to labor have no injury and therefore no damages to recover in civil court. Plaintiffs cite no authority to the contrary.

## III.  THE DISTRICT COURT PROPERLY DENIED PLAINTIFFS' MOTION TO ALTER.

### A.  The District Court's Without-Leave-To-Amend Disposition of the FAC Was Appropriate.

As part of its Dismissal Order, the district court denied Plaintiffs leave to amend—which they never sought—and entered final judgment in favor of Salvation Army. (SA 1); (Dkt. No. 62). Before addressing their Motion to Alter, Plaintiffs appear to assert that the district court's without-leave-to-amend disposition was error at the time the court entered judgment. (Pls.App.Br. 47). That assertion is incorrect.

District courts have "wide discretion" in denying leave to amend. *See, e.g., Vitrano v. United States*, 721 F.3d 802, 806 (7th Cir. 2013). The district court explained that it denied Plaintiffs leave to amend

because they had "already amended their complaint" and because nothing in the FAC suggested that Plaintiffs could "amend to cure the defects" in their pleading. (SA 1). This ruling was well within the confines of the district court's "wide discretion."

Plaintiffs' FAC suffered from the same defects in their Original Complaint that were identified in Salvation Army's first motion to dismiss. The FAC, just like the Original Complaint, suffered from the same *Rooker-Feldman* and Rule 12(b)(6) problems. Both pleadings referred to "court order[s]" and state sentences that were tied to Justice-Referred Plaintiffs' claimed injuries.[17] Both pleadings made allegations showing that Plaintiffs' participation in the Rehabilitation Program was voluntary.[18] And both pleadings failed to allege that Plaintiffs were denied access to food, shelter, and government assistance if they left the Rehabilitation Program early. Salvation Army identified these defects, among others, in painstaking detail in both its motion to dismiss Plaintiffs' Original Complaint and its motion to dismiss Plaintiffs' FAC.

---

[17] *See, e.g.*, AA 2, ¶ 3; 22, ¶ 145; 34, ¶ 265; *see also* ASA 2, ¶ 3; 17 ¶ 111; 31, ¶ 248.

[18] *See, e.g.,* AA 29, ¶ 215; 32, ¶ 245; *see also* ASA 23, ¶ 173; 28, ¶¶ 217, 219.

(*Compare* Dkt. No. 29-1 at 13-24 *with* Dkt. No. 39-1 at 12-24). The

district court's standing order, moreover, advised Plaintiffs to "carefully

review" Salvation Army's motions to dismiss, and that if Plaintiffs'

elected to litigate the motion, the "Court may dismiss the case with

prejudice…"[19] Plaintiffs, in short, had fair notice from Salvation Army's

two motions to dismiss to address these defects, but failed to adequately

do so.

The district court followed settled Seventh Circuit precedent

affirming the denial of leave to amend in these circumstances—where

plaintiffs have filed multiple complaints in the face of motions to

dismiss, and thus have had fair warning of the defects in their

complaint but failed to correct them. *See, e.g. Agnew*, 683 F.3d at 347

("We have stated that a district court is not required to grant [leave to

amend] when a plaintiff has had multiple opportunities to state a claim

upon which relief may be granted.") (citations omitted); *Midwest*

---

19 *See* Judge Blakey Standing Order on Motions to Dismiss, found at
https://www.ilnd.uscourts.gov/judge-info.aspx?RxIItJ+3ldN99GnKt
+Q4wg== ("In its response [to a motion to dismiss], the non-moving
party must [ ] confirm whether, in its view, any deficiencies identified
by the motion to dismiss could be cured by amendment").

*Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020-21 (7th Cir., 1992) (affirming denial of leave to amend where plaintiff "had fair notice of its pleading deficiencies from the defendants' motion to dismiss, but it chose to ignore that warning").

Plaintiffs cite to *Pension Trust Fund for Operating Engineers v. Kohls Corp.*, 895 F.3d 933 (7th Cir. 2018) to argue that they automatically get an amendment after the first time a court dismisses the complaint. (Pls.App.Br. 49). That is not what *Pension Trust* says. First, this Court ultimately *affirmed* the lower's denial of leave to amend in *Pension Trust*. *Pension Trust*, 895 F.3d at 942. Second, the amended complaint was *Pension Trust* plaintiffs' only pleading subject to motion-to-dismiss practice and effectively operated as their "original complaint." *Id.* at 941. Not so here—unlike *Pension Trust*, this is not a case where only *one* complaint was tested by a motion to dismiss; Plaintiffs, here, had two bites at the pleading apple, following two separate rounds of motions to dismiss. They had an opportunity to amend following Salvation Army's first motion to dismiss, took advantage of that opportunity, and still failed to state a valid claim. *Pension Trust* is thus inapposite.

For similar reasons, the cases Plaintiffs cite in their brief—*Abu-Shawish*, *O'Boyle*, and *Barry Aviation* (Pls.App.Br. 47-48)—are all inapposite as well. In each case, the plaintiffs—unlike Plaintiffs here—had no opportunity to amend their *original* complaint before their cases were dismissed with prejudice. Those are not the circumstances of this case.

Nowhere in response to Salvation Army's motion to dismiss the FAC did Plaintiffs request leave to amend as an alternative to opposing the motion. And nowhere in response to that motion did Plaintiffs "confirm whether…any deficiencies identified by the motion…could be cured by amendment," which the district court in its standing order specifically asked Plaintiffs to do as part of their opposition. *See* p. 65 n.19, *supra*. Accordingly, the district court appropriately exercised its "broad discretion" in denying Plaintiffs further leave to amend at the time it dismissed the FAC and entered judgment. *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016).

## B.   The District Court Properly Denied Plaintiffs' Motion to Alter.

Plaintiffs did not seek leave to amend the FAC, or attempt to explain how the FAC could be cured, until twenty-eight days after the

district court had already entered judgment when they filed their

Motion to Alter. The crux of Plaintiffs' Motion to Alter sought reversal

of the Dismissal Order's without-leave-to-amend disposition. The

district court properly denied that motion.

### 1. Rule 59(e), Not Rule 15(a), Governs Plaintiffs' Motion to Alter.

Because the district court had entered judgment by the time of

Plaintiffs' Motion to Alter, the motion is governed by Rule 59(e). *See,*

*e.g.* Fed. R. Civ. P. 59(e); *Vesely v. Armlist LLC*, 762 F.3d 661, 666 (7th

Cir. 2014). The rule allows a court to open and amend a judgment only

where a court committed a "manifest error of law or fact" or "newly

discovered evidence" has been presented. *Vesely*, 762 F.3d at 666.

Plaintiffs do not attempt an argument that their Motion to Alter

satisfies the Rule 59(e) standard. Nor could they satisfy that standard

even if they tried. As set forth above, the district court's without-leave-

to-amend disposition of the FAC was soundly within its discretion, and

plaintiffs fail to offer any explanation as to why they could not have

sought leave to amend their FAC before judgment was entered,

especially when they were invited to do so by the court. *See* p. 65 n.19,

*supra*.

Instead, just as they did before the district court, Plaintiffs ask this Court to simply skip over Rule 59(e)'s rigorous standard and supplant it with Rule 15(a)'s standard on motions for leave to amend. Their request should be denied as it mischaracterizes the law. The Seventh Circuit has firmly stated:

> [O]nce a final judgment has been entered, the normal right to amend once as a matter of course under [Rule] 15(a) is extinguished. What the aggrieved party must do, instead, is to file a motion under Rule 59(e) seeking relief from the judgment, and, if it believes that the deficiencies the court has identified can be cured through an amended complaint, it must proffer that document to the court in support of its motion. *Even if the party does this, it has a hard row to hoe, because normally Rule 59(e) motions may not be used to cure defects that could have been addressed earlier. The party must instead point either to an error of law or to newly discovered evidence.*

*Fannon,* 583 F.3d at 1002 (emphasis added).

Plaintiffs cite to several cases for the proposition that the Court should ignore Rule 59(e)'s rigorous standard and apply Rule 15's more liberal standard instead (Pls.App.Br. 51)—but these cases are inapposite. *Runnion*, *Bausch*, *NewSpin*, and *Foster* are all cases where an *original complaint* was dismissed without plaintiffs having opportunity to amend. Here, Plaintiffs' *multiple pleadings* are "not a simple case of a single complaint that is tossed out of court without

explanation." *See Fannon*, 583 F.3d at 1003 (distinguishing *Foster* on this basis). Unlike the plaintiffs in the cases they cite, Plaintiffs, here, "ha[ve] already had an opportunity to amend the[ir] complaint at least once," so "[t]hat line of cases does not apply." *See Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del Estado,* No. 12 C 6357, 2016 WL 4530175 at * 2 (N.D. Ill. Aug. 30, 2016) (explaining same).

Plaintiffs filed an FAC that is substantially similar to their Original Complaint. Plaintiffs had been presented with Salvation Army's motion-to-dismiss arguments on two separate occasions. They had fair notice of the defects in their multiple pleadings. And still they offered no new evidence, law, or explanation as to why their pleading defects could not have been addressed before the district court entered judgment. Their Motion to Alter thus properly failed under Rule 59(e).

## 2. Even if Plaintiffs Satisfied Rule 59(e), Their Rule 15 Request for Leave to File a Second Amended Complaint Was Futile.

As was the case for Judge Blakey, this Court has no need to address the merits of Plaintiffs' proposed SAC because Plaintiffs have failed to satisfy the Rule 59 standard. But even if the Court were to review Plaintiffs' proposed SAC under Rule 15(a), their argument fails,

because Plaintiffs, yet again, do not present allegations sufficient to plead either subject matter jurisdiction or a valid claim.

Under Rule 15(a), courts have "broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). Their proposed amendment is futile because it "would not survive a motion to dismiss" and suffers from many of the same defects as their FAC. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014).

Plaintiffs' assertion that the SAC "cured all of the supposed deficiencies that the district court identified" (Pls.App.Br. 48) is not accurate, and it says nothing about the deficiencies that the district court did not expressly address—deficiencies that still exist and that this Court, on its own, may still consider.

The SAC does not save Justice-Referred Plaintiffs' claims from *Rooker-Feldman*. Plaintiffs contend that the SAC "made clear that no state court ordered any plaintiff to be subjected to forced labor." This contention is circular and a non-sequitur. The relevant inquiry for

*Rooker-Feldman* is whether Justice-Referred Plaintiffs' injuries arise from or are intertwined with a state-court judgment. Section II.A.1.a at pp. 23-24, *supra.* Justice-Referred Plaintiffs complain about feeling compelled to participate in the Rehabilitation Program out of concern for triggering the return-to-prison condition of their criminal sentences. Those sentences come from no other place but the state courts in Illinois and Michigan that sentenced them. *Rooker-Feldman* would still apply to bar Justice-Referred Plaintiffs' claim even if the SAC could be validly considered, which it can't. And *Rooker-Feldman* aside, the SAC does not save Plaintiffs from their lack of standing.

As to Rule 12(b)(6), Plaintiffs contend that the SAC saves their TVPRA claims because it includes allegations that they had "no reasonable alternative for food and housing other than the Salvation Army, and that the plaintiffs did not immediately regain access to their benefits upon leaving the Salvation Army." (Pls.App.Br. 48). There is no merit to this argument.

*First,* Plaintiffs' "no reasonable alternative" allegations are set forth in only vague, conclusory terms, and fail the *Twombly* and *Iqbal* plausibility standard. *See Juza v. Wells Fargo Bank, N.A.*, 794

72

Fed.Appx. 529, 541 (7th Cir. 2020) ("conclusory allegation[s]" are "insufficient to state a plausible claim"). *Second*, Plaintiffs' allegations about not regaining "immediat[e]" access to their government benefits, contradicts allegations in their FAC and need not be considered. *See* p. 59*,* n.59, *supra. Third*, the SAC does not save Plaintiffs' TVPRA claims from other fatal deficiencies, including:

- Plaintiffs' failure to plausibly plead that Salvation Army acted with requisite scienter, which was an independent ground for the district court's dismissal. *See* Section II.B.3. at pp. 60-62, *supra.*

- Plaintiffs' failure to plausibly plead that they engaged in "labor or services" under Section 1589(a). *See* Section II.B.1 at pp. 35-38, *supra.*

- Plaintiffs' failure to plausibly plead that Salvation Army Central engaged in "threats" of serious harm. *See* Section II.B.2 at pp. 38-58, *supra.*

Their proposed SAC suffers from futility and the same fundamental defects of the FAC.

## CONCLUSION

For the reasons stated, the district court judgment should be affirmed.

/s/ *Thomas P. Gies*
Thomas P. Gies
Daniel W. Wolff

CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2690
Fax: (202) 628-5116
tgies@crowell.com

Amy M. Gibson
Aronberg Goldgehn Davis &
Garmisa
330 N. Wabash Avenue, Suite
1700
Chicago, Illinois 60611
312-828-9600
agibson@agdglaw.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation contained in Fed. R. App. P. 32(a)(7) because, excluding the portions exempted by Rule 32(f), this brief contains 13,997 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

/s/ *Thomas P. Gies*
Thomas P. Gies

## CERTIFICATE OF SERVICE

I certify that on July 21, 2023, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Seventh Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Thomas P. Gies*
Thomas P. Gies